(No. 57935.—

ALFRED M. SANELLI, Appellant, v. GLENVIEW
STATE BANK, Appellee.

*Opinion filed July 17, 1985.—Rehearing denied
September 27, 1985.*

4

SIMON, J., CLARK, C.J., and WARD, J., dissenting.

Robert E. Senechalle, Jr., of Arlington Heights, and William J. Harte, Richard J. Prendergast and Joseph E. Tighe, of Chicago (Senechalle & Murray, P.C., William J. Harte, Ltd., and Richard J. Prendergast, Ltd., of counsel), for appellant.

Samuel Weisbard and William P. Schuman (McDermott, Will & Emery, of Chicago, of counsel), for appellee.

JUSTICE RYAN delivered the opinion of the court:

In April 1982, the plaintiff, Alfred M. Sanelli (Sanelli), filed a class action in the circuit court of Cook County against the defendant, Glenview State Bank. The bank had served as land trustee for the Sanellis and had also loaned them money. The loan was secured by an assignment to the bank of the beneficial interest in the land trust. The complaint alleged that the bank breached its fiduciary duty to Sanelli and his wife, the land-trust beneficiaries, by purchasing the trust property for its own benefit at a public sale, after the Sanellis defaulted on their loan. The plaintiff's theory of recovery is based on this court's decision in *Home Federal Savings & Loan Association v. Zarkin* (1982), 89 Ill. 2d 232. The bank filed an amended motion to dismiss which alleged that the class action was improper and that the action was barred by Public Act 82—891, "An Act in relation to land trusts ***," which was approved and became effective on August 6, 1982 (Ill. Rev. Stat. 1983, ch. 148, pars. 81 to 84). Section 4 of the Act (Ill. Rev. Stat. 1983, ch. 148, par. 84) provides that the Act applies to all security interests in a beneficial interest in land trusts whether arising before or after the effective date of the Act. On December 22, 1982, the trial court granted the

bank's motion based solely on Public Act 82—891. It did not consider the propriety of the class-action claim. Pursuant to Supreme Court Rule 302(b) (87 Ill. 2d R. 302(b)), we allowed Sanelli to appeal directly to this court.

On April 27, 1984, an opinion was filed in this case which held the retroactivity provision of Public Act 82—891, section 4, invalid. Thereafter, the bank filed a petition for rehearing. The bank's petition was granted, and the parties were instructed to address the issues of whether the retroactivity provision of Public Act 82—891 violates the principle of separation of powers, the prohibition against laws which impair the obligations of contracts, or the due process clause.

The following facts are pertinent to this appeal. In July 1968, Sanelli and his wife entered into an Illinois land-trust agreement with the bank, as trustee. The parties also executed a trust deed. The trust was known as trust No. 658 and covered the Sanellis' property at 805 and 809 Becker Road, in Glenview. Under the agreement the bank held both the legal and equitable title to the property in trust for the benefit of the Sanellis, as land-trust beneficiaries. In April 1978, the Sanellis executed an assignment of their beneficial interest in the land trust as security for a loan from the bank. Thus, the bank was then serving as land trustee for the Sanellis and was also their secured creditor. The Sanellis subsequently defaulted on their loan, and their beneficial interest in the trust property was sold at a public sale on December 30, 1981. The bank purchased the beneficial interest in the property for its own account for $100,000, which Sanelli alleged was below the fair market value of the property. The bank evicted the Sanellis from the property.

On January 21, 1982, this court decided *Home Federal Savings & Loan Association v. Zarkin* (1982), 89

Ill. 2d 232. In that case, the Zarkins entered into a land-trust agreement with the Devon National Bank. They directed Devon, as trustee, to execute a first mortgage of the trust property in favor of Home Federal. The Zarkins later borrowed $14,000 from Devon. When they were unable to repay the loan they assigned their beneficial interest in the land trust to Devon, as security for the loan. Home Federal sued both Devon and the Zarkins to foreclose its first mortgage and obtained a decree of foreclosure. The property was ordered sold and was purchased by Home Federal. Eight days before the redemption period expired, Devon purchased the certificate of sale from Home Federal. The Zarkins then sued Devon. They asserted that Devon breached its fiduciary duty as trustee, and asked the trial court to either set aside the sale to Devon and extend the redemption period to enable them to redeem, or to decree that Devon had redeemed as trustee for the Zarkins' benefit and enjoin Devon from taking any further action with respect to the property.

In *Zarkin*, we stated that Illinois land trustees are subject to the same fiduciary duties imposed on all trustees. (89 Ill. 2d 232, 239.) Thus, Devon owed the Zarkins a fiduciary's duty of loyalty. We held that since this fiduciary duty would have precluded Devon from purchasing the trust property for its own account at the sheriff's sale, it likewise prohibited Devon from later purchasing the certificate of sale from Home Federal. (89 Ill. 2d 232, 244.) By purchasing the trust property Devon breached its duty of loyalty. Following this court's decision in *Zarkin* in January 1982, the Sanellis, as noted above, filed this class action in April 1982.

On August 6, 1982, Public Act 82—891 became effective. Both parties agree, and the language of the Act itself indicates, that the legislation was passed in response to our decision in *Zarkin*. The Act provides in part:

"Sec. 1.

(a) The General Assembly finds:

* * *

(4) *** [B]eneficiaries will frequently select a financial institution as trustee simply because that institution will be asked by the beneficiaries to extend credit to the trust or to the beneficiaries secured by their interest in the trust.

(5) Recently, this accepted practice of a creditor lending money to itself as trustee or to the beneficiaries upon the security of an interest in the land trust of which it is trustee, has been scrutinized by the Illinois Supreme Court.

(b) It is the purpose of this Act to codify the accepted practice of a creditor lending to the trustee of a land trust or the beneficiaries thereof upon the security of trust property or their interest in the trust, even though the creditor and the trustee are the same, and to foster and encourage the availability of financing for owners and developers of real estate.

Sec. 2. If a debt is secured by a security interest in a beneficial interest in a land trust or by a mortgage on land trust property, neither the validity or enforceability of the debt, security interest or mortgage nor the rights, remedies, powers and duties of the creditor with respect to the debt or the security shall be affected by the fact that the creditor and the trustee are the same person, and the creditor may extend credit, obtain such security interest or mortgage, and acquire and deal with the property comprising the security as though the creditor were not the trustee. ***

* * *

Sec. 3. The fact that a trustee of a land trust is or becomes a secured or unsecured creditor of the land trust, the beneficiaries of the land trust, or a third party whose debt to such creditor is guaranteed by a beneficiary of the land trust, shall not be a breach of, and shall not be deemed evidence of a breach of, any fiduciary duty owed by said trustee to the beneficiaries.

Sec. 4. This Act applies to all security interests in a

beneficial interest in land trusts and all mortgages on land trust property and to all debts secured thereby, *whether arising before, on, or after the effective date of this Act."* (Emphasis added.) Pub. Act 82—891, eff. Aug. 6, 1982, Ill. Rev. Stat. 1983, ch. 148, pars. 81 to 84.

We first consider the issue of whether the retroactivity provision of Public Act 82—891 violates the principle of separation of powers. The Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, sec. 1.) Sanelli contends that the General Assembly violated this principle because it attempted to nullify our decision in *Zarkin* by enacting Public Act 82—891, which applies to conduct occurring prior to its enactment and prior to *Zarkin* and which expressly forbids the result announced in *Zarkin*. We disagree.

The general rule is that legislation is not *per se* unconstitutional merely because it is retroactive. 2 Sutherland, Statutory Construction sec. 41.03, at 249 (4th ed. 1973); DeMars, *Retrospectivity and Retroactivity of Civil Legislation Reconsidered,* 10 Ohio N.U.L. Rev. 253, 267 (1983); Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, 694 (1960); see Greenblatt, *Judicial Limitations on Retroactive Civil Legislation,* 51 Nw. U.L. Rev. 540, 550 (1956).

In most cases the constitutionality of the retroactive application of statutes is judged against the limitations of due process clauses or the constitutional limitation on impairing the obligation of contracts. The discussion in most of the literature on the subject, including that cited above, centers on these two constitutional limitations. As one author noted, "[o]ccasionally the Court will hold a retroactive statute unconstitutional on the ground that it violates the constitutional principle of separation of

powers." (Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, 694 n.13 (1960).) In this State, however, it is apparent from the cases discussed below that separation of powers is a more common ground for challenging the validity of retroactive statutes than it is in other jurisdictions. Actually, the separation-of-powers challenge is very narrow in scope, as will be noted below. In most of the cases that have come before this court in recent years, those challenging the retroactive statute on that ground have attempted to place a more severe limitation on the legislature than accepted separation-of-powers standards permit.

The General Assembly may enact retroactive legislation which changes the *effect* of a prior decision of a reviewing court with respect to others whose circumstances are similar but whose rights have not been finally decided. Subject to due process and impairment-of-contracts limitations discussed later, the legislature has the authority to change the law for future cases arising from facts existing prior to the effective date of the legislation which made the change. This power extends to decisions in which the law changed by the legislature resulted from a reviewing court's interpretation of a statute as well as from a reviewing court's interpretation of the common law. What the General Assembly may not do is pass a statute in an attempt to change the result of a decision which has been finally decided as between the parties to that case. This is the essence of the holdings in the cases discussed below.

*Schlenz v. Castle* (1981), 84 Ill. 2d 196, involved a separation-of-powers challenge to a retroactive provision of the Revenue Act of 1939. During the 1976 and 1977 tax years, section 103 of the Revenue Act of 1939 provided that the local supervisor of assessments was to publish a list of real estate for which assessments had

been added or changed since the prior assessment. (See Ill. Rev. Stat. 1975, ch. 120, par. 584.) In *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 22-23, this court held that the publication dates set forth in section 103 were mandatory and that failure to publish assessment notices by the required dates was fatal. The plaintiffs in *Schlenz* filed suit challenging real estate assessments which had not been published until after the required dates. However, before judgment was entered in the trial court, the legislature added section 318.1 to the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 799.1). Section 318.1 validated real estate assessments for 1978 and all prior years even though publication had not been timely made. Despite the plaintiffs' contention that section 318.1 violated the principle of separation of powers, the court held that the General Assembly could properly enact post-*Andrews* legislation to validate tax assessments made for years prior to our decision in *Andrews*. *Schlenz v. Castle* (1981), 84 Ill. 2d 196, 208.

*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, involved the constitutionality of certain provisions of the new Illinois Marriage and Dissolution of Marriage Act. The action was brought by a husband who was a party to a pending divorce action and who held title to certain property. Section 503(b) of the Act provided that all property acquired after marriage and before a judgment of dissolution of marriage was presumed to be marital property. Section 801(b) stated that the the Act "applie[d] to all *pending actions* and proceedings commenced prior to its effective date with respect to issues on which a *judgment ha[d] not been entered.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 40, par. 801(b).) The plaintiff contended that section 801(b), which retroactively applied the marital-property provisions of section 503(b), violated the principle of separation of powers. Quoting from *People ex rel. Coen v. Henry* (1921), 301

Ill. 51, 53, this court noted: " 'The legislature has power to change the law, and the court, in the decision of pending cases, will dispose of them under the law in force at the time its judgment is rendered.' " (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 571.) Since section 801(b) merely mandated which law the court was to apply to the facts in pending cases, the court held that it did not invade the province of the judiciary. (71 Ill. 2d 563, 571.) As noted above, the statute specifically applied only to actions on which a judgment had not been entered.

*People v. Holmstrom* (1956), 8 Ill. 2d 401, involved facts similar to those in *Schlenz*. The State sued the defendant to recover delinquent personal property taxes for several years in which assessment lists were not published until after the date required in section 103 of the Revenue Act of 1939. The trial court entered judgment for the State, and the defendant appealed directly to this court. Since we had earlier held that publication was mandatory (*People v. Jennings* (1954), 3 Ill. 2d 125, 131), the defendant argued that the assessments were void. However, prior to the trial court's judgment, a validating act had been passed which provided that all assessments were valid for purposes of taxation even though they had not been published as required by statute. The defendant contended that the validating act itself was void. The court upheld the constitutionality of the validating act, concluding that "inasmuch as the legislature had the power to permit the levy of the taxes without requiring the assessments to be published, it was likewise within its power to cure irregularities in publication by the validating act." *People v. Holmstrom* (1956), 8 Ill. 2d 401, 405-06.

In *Worley v. Idleman* (1918), 285 Ill. 214, elections were held to authorize a tax levy and the issuance of bonds for the construction and maintenance of roads. Suit was filed by property owners who refused to pay

the tax. On appeal, this court held that the bonds were invalid because the election ballots had been so worded that the voters were unable to vote against issuing the bonds. The General Assembly then passed legislation which provided a method of ratifying the bonds. After the bonds were ratified, a number of the taxpayers who had earlier refused to pay the tax for the original bonds filed suit to enjoin the issuance of new bonds and their exchange for the original bonds. This court upheld the legislation despite its earlier decision that the bonds were invalid, stating the the legislature had not, by passing the legislation, invaded the province of the judiciary. 285 Ill. 214, 221.

Sanelli attempts to dismiss *Schlenz* and *Holmstrom* on the ground that they involved curative or validating legislation, while the case at bar does not. However, the fact remains that in those cases the General Assembly passed legislation which retroactively changed the effect of prior decisions of this court. In a sense, the legislature overruled the decisions of the court as to all matters that had not been adjudicated.

*Roth v. Yackley* (1979), 77 Ill. 2d 423, and *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, cited by Sanelli, are not contrary to above-stated principle that the General Assembly may enact retroactive legislation which changes the effect of a prior decision of a reviewing court with respect to cases which have not been finally decided.

*Roth v. Yackley* involved two separate class actions. The plaintiffs sought the return of fines and costs paid by defendants in drug cases as conditions of probation under section 10 of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 710) and section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1410). In *People v. DuMontelle* (1978), 71 Ill. 2d 157, 164-66, this court held that the fines and costs

were not authorized under section 10 of the Cannabis Control Act. Based on *DuMontelle*, the plaintiffs in *Roth* contended that the fines and costs *they had paid* had been improperly collected and should be refunded. However, approximately three months after the decision in *DuMontelle*, both section 10 and section 410 were amended to expressly authorize fines and costs as conditions of probation. The amendment specifically provided that the changes made by it were declaratory of existing law and were applicable to events which occurred before the effective date of the amendatory act. (Pub. Act 80—1202, sec. 3, eff. June 30, 1978.) On appeal, this court held that the amendatory act violated the principle of separation of powers. *Roth v. Yackley* (1979), 77 Ill. 2d 423, 429.

The legislation considered in *Roth* violated the separation-of-powers doctrine in two respects. First, the legislature attempted, by subsequent legislation, to declare or construe the meaning of a prior statute and to do so contrary to the construction that had been placed on that statute by this court in *DuMontelle*. This court held in *Roth* that it is the function of the judiciary and not the legislature to construe statutes and to apply the statutes to the cases before it. When this court construed the statute in *DuMontelle* that construction became a part of the statute until changed by the legislature. Although the legislature could change the statute for application to cases that had not been finally decided if it believed the construction placed on the statute by the court was not that which was intended, it could not change the meaning given to the prior law by this court in cases which had been finally decided. *Roth v. Yackley* (1979), 77 Ill. 2d 423, 428-29.

The second separation-of-powers violation noted in *Roth* involved the attempt by the legislature to, in effect, reverse decisions of this court by the retroactive applica-

tion of the amendment. *Roth* was an attempt to recover fines and costs that had been paid in cases which had been finally adjudicated. In *DuMontelle* this court held that those fines and costs had been wrongfully levied. *Roth* held that the legislature could not, by an amendment to the statute, reverse the decision of this court in *DuMontelle* and could not validate the invalid judgments which had previously been entered imposing fines and costs which plaintiffs sought to recover in *Roth*. This does not mean that the legislature is powerless to change the result in any future case arising from facts existing prior to the effective date of the amendment which makes the change. This court concluded its decision in *Roth* by stating, "[W]e find that the General Assembly cannot constitutionally overrule a decision of this court by declaring that an amendatory act applies retroactively to *cases decided before* its effective date." (Emphasis added.) 77 Ill. 2d 423, 429.

In *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, the trial court entered an order *nunc pro tunc* dissolving the parties' marriage, but reserving property disposition, child custody, and maintenance issues for future consideration. The petitioner moved to have the order vacated on the grounds that the trial court lacked authority to enter a bifurcated judgment and that it had no authority to enter the judgment *nunc pro tunc*. Section 401(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 401(3)) was interpreted by the appellate court as allowing the reservation of child custody, support, maintenance or property disposition only under "appropriate circumstances." The appellate court held that such "appropriate circumstances" were not present and vacated the judgment. After the appellate court filed its decision, section 401(3) was amended to retroactively validate the issuance of bifurcated judgments. The amendment declared that all bifur-

cated judgments entered prior to the effective date of the amendatory act were valid as of the date of entry. This court held that the amendment was unconstitutional. In characterizing the defect in the amendment the court stated that it "attempts to attribute to a statute, at the time of the reviewing court's opinion, a meaning different than that declared in the opinion and attempts to validate *all judgments* reserving such questions [custody, support, maintenance, and property disposition] that were *entered prior to the effective date* of the amendment." (Emphasis added.) (*In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 206.) Since the amendment attempted to validate these judgments, it violated the principle of separation of powers. This is the same defect which we noted in *Roth*.

This court in *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, applied the same principles of law announced above. In that case the taxpayer argued that the retroactive application of an amendment enacted by the legislature subsequent to this court's decision in *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, overruled the decision of this court in that case in contravention of the separation-of-powers doctrine. The taxpayer argued that the new statutory language could not be retroactively applied to nullify the effect of *Caterpillar*. This court noted that the General Assembly cannot constitutionally reverse a decision of this court by declaring that an amendatory act applies retroactively to cases decided before its effective date. The court said, "As stated before, at the time that the legislature enacted [the amendment], the circuit court had not addressed the taxpayer's question concerning combined apportionment and the invested-capital tax. The taxpayer had not obtained a judgment on the issue, so the amendment cannot be said to unduly infringe on the powers of the judiciary." *General Telephone Co. v. Johnson* (1984), 103 Ill.

2d 363, 383-84.

In *Seese v. Bethlehem Steel Co.* (4th Cir. 1948), 168 F.2d 58, the court explained the effect that retroactive application of an amendment to the Fair Labor Standards Act had on earlier decisions of the United States Supreme Court, which had construed the Act prior to its amendment. The court stated:

> "When the Fair Labor Standards Act was interpreted by the Supreme Court as requiring computation in the work week of time consumed in walking to work and other preliminary activities, this was just as though the original act contained express provision to that effect; and, when Congress passed the sections of the statute here under consideration, the effect was to repeal the original statute to the extent of that coverage ***. This does not in any manner affect adjudications already made, nor does it attempt to direct the courts in the exercise of judicial power. All that it does is to define rights, i.e., to amend or limit the effect of a prior statute [as construed by the court] so as to take away a cause of action given by it." 168 F.2d 58, 62.

As stated earlier, subject to due process and impairment-of-contracts limitations, the legislature has the authority to change the law for future cases arising from facts existing prior to the effective date of the legislation which made the change. *Schlenz, Holmstrom, Roth, Cohn, General Telephone,* and *Seese* are all examples of decisions in which the General Assembly or Congress passed legislation that changed a reviewing court's interpretation of a statute. *Chevron Chemical Co. v. Superior Court* (1982), 131 Ariz. 431, 641 P.2d 1275, and *Peterson v. City of Minneapolis* (1969), 285 Minn. 282, 173 N.W. 2d 353, discussed below, are examples of decisions in which the law changed by the legislature resulted from a reviewing court's interpretation of the common law.

In *Chevron,* the Arizona General Assembly enacted retroactive legislation which changed a prior decision of

the Arizona Supreme Court that had been based on the common law. In addressing an argument that the legislation violated the doctrine of separation of powers, the court stated:

"Under the doctrine of separation of powers, the judiciary has the exclusive power to declare 'existing law.' [Citation.] *** And we have held that an attempt by the legislative branch to interpret existing law by stating that an act was 'declaratory of existing law' was '*** clearly *** unconstitutional.' (*Martin v. Moore,* 61 Ariz. 92, 94 & 96, 143 P.2d 334, 335 (1943).

*** Although it would appear that the legislature disagreed with our decision ***, the legislature did not attempt to change [that decision]. This they could not do. The legislature, instead, attempted to change the statute upon which the *** decision was, at least in part, based. This is a valid, accepted and constitutional legislative function." *Chevron Chemical Co. v. Superior Court* (1982), 131 Ariz. 431, 440, 641 P.2d 1275, 1284.

In *Peterson,* a pedestrian sued the city of Minneapolis to recover damages for an injury he sustained when he fell over a raised portion of a sidewalk. The city filed an answer which raised the defense of contributory negligence. The case was tried on July 2 and July 3, 1969, and the jury returned a verdict in favor of the city. During trial the court had refused to submit a comparative negligence instruction as requested by the plaintiff. The instruction was based on a new Minnesota statute which adopted comparative negligence in the place of the common law doctrine of contributory negligence. The legislature specifically provided that the statute was to be effective in any action the trial of which was commenced after July 1, 1969. On appeal, the Minnesota Supreme Court determined that the statute could constitutionally be given retroactive effect and held that the trial court had erred in refusing to give the comparative negligence instruction. *Peterson v. City of Minneapolis* (1969), 285

Minn. 282, 290, 173 N.W. 2d 353, 358.

In summary, the General Assembly may enact retroactive legislation which changes the effect of a prior decision of a reviewing court with respect to cases which have not been finally decided. In the case at bar, the dispute between Sanelli and the bank was pending in the trial court at the time Public Act 82—891 became effective, and that dispute had yet to be decided. Therefore, applying Public Act 82—891 to the dispute between Sanelli and the Bank does not invade the province of the judiciary or violate the principle of separation of powers established by the Illinois Constitution.

The remaining issues are whether the retroactivity provision of Public Act 82—891 violates the constitutional prohibition against laws which impair contracts or whether the retroactive application of the Act constitutes a taking of property without due process of law under either the United States Constitution or the Illinois Constitution (U.S. Const., art. I, sec. 10; U.S. Const. amend. XIV; Ill. Const., 1970, art. I, sec. 2, 16). These issues are so similar that they may be considered together. (Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, 695 n.19 (1960); Greenblatt, *Judicial Limitations on Retroactive Civil Legislation,* 51 Nw. U.L. Rev. 540, 544 (1956).) The latter article states:

"Although it has been suggested that the standards may be more rigid under the contract clause than under the due process clause, and thus that contract rights may be better protected against retroactive state legislation than other rights, it is probable that since the adoption of the fourteenth amendment the former clause has been largely absorbed by the latter." (51 Nw. U.L. Rev. 540, 543-44 (1956).)

Therefore, it would appear that if the retroactivity provision of Public Act 82—891 does not unconstitutionally

impair Sanelli's contract rights, then the provision would not deprive him of property without due process of law.

In beginning this analysis we acknowledge, as we must in considering any constitutional challenge, that a strong presumption of constitutionality attaches to any legislative enactment and that the burden rests upon the challenger to demonstrate its invalidity. (*General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 379; *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 303.) In discussing the retroactive application of legislation in light of the due process clauses, the courts often speak of "vested rights" as being protected. However, the term "vested rights" is said to be conclusory, that is, a right is usually said to be vested when it has been so far perfected that it cannot be taken away by statute. A more accurate determination of whether retroactively applied legislation violates the due process clause or the contract clause can be made by balancing the various factors involved, including the public interest to be served. (Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, 696-97 (1960).) In this same article the author also states:

> "[S]everal cases have indicated that the standard of reasonableness under the contract clause is the same as that utilized in determining the validity of retrospective legislation under the due-process clauses ***." 73 Harv. L. Rev. 692, 695 (1960).

It does not necessarily follow from the fact that the retroactivity provision of Public Act 82—891 affects contractual obligations that it violates the contract clause. The United States Supreme Court has stated that "a statute does not violate the Contract Clause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment." (*Exxon Corp. v.*

*Eagerton* (1983), 462 U.S. 176, 190, 76 L. Ed. 2d 497, 510, 103 S. Ct. 2296, 2305.) In determining whether the contract clause has been violated, "the first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation." *Allied Structural Steel Co. v. Spannaus* (1978), 438 U.S. 234, 244-45, 57 L. Ed. 2d 727, 736-37, 98 S. Ct. 2716, 2722-23.

Prior to our decision in *Zarkin,* it had been a long-standing practice for banks to act as both land trustee and secured creditor for the same trust beneficiary. Public Act 82—891 acknowledged this and states that the purpose of the Act is to codify this "accepted practice." (Ill. Rev. Stat. 1983, ch. 148, par. 81(b).) Thus in *Zarkin,* for the first time it was held by this court that land trustees in Illinois were subject to the same fiduciary duties imposed on all trustees and that a trustee – secured creditor was precluded from purchasing the trust property after foreclosure. This court simply had not addressed those questions prior to *Zarkin.* Furthermore, earlier cases from the appellate court had not foreshadowed our holding in *Zarkin.* See *Bank of Illinois in Mt. Vernon v. Bank of Illinois in Mt. Vernon* (1973), 13 Ill. App. 3d 711; Comment, *Land Trustee as Secured Creditor: Fiduciary Duties Revisited,* 1982 S. Ill. U.L.J. 249.

In *Mt. Vernon,* for example, the property owner (a management company) entered into a trust agreement with the Bank of Illinois in Mt. Vernon, as trustee. The owner and its president later borrowed $8,000 from the bank in that case and directed it, as trustee, to execute and deliver a mortgage on the trust property to secure

the loan. The owner and its president defaulted on the loan and the bank commenced foreclosure proceedings. The issue before the appellate court was whether the bank could maintain a suit against itself as trustee. In holding that the bank could maintain the suit, the court stated that it would be fundamentally unfair to allow the owner to direct the trustee to obtain the mortgage, obtain the proceeds from it, and then escape payment because the trustee had followed its directions. In addition, it rejected the contention that the bank could not recover because of self-dealing since the acts were specifically authorized by the beneficiary. (*Bank of Illinois in Mt. Vernon v. Bank of Illinois in Mt. Vernon* (1973), 13 Ill. App. 3d 711, 713.) In contrast to *Zarkin*, there was no mention of fiduciary duties or breach of those duties in *Mt. Vernon*.

The Supreme Court has stated that a law impairing the obligations of private contracts "may be constitutional if it is reasonable and necessary to serve an important public purpose." (*United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 25, 52 L. Ed. 2d 92, 112, 97 S. Ct. 1505, 1519.) It is obvious that the legislature did not agree with this court's holding in *Zarkin*. The lengthy recitation of legislative findings and the statement of purpose contained in the Act clearly set forth the intent of the legislature that traditional trust limitations, as defined in *Zarkin*, should not be imposed to prevent a land trustee from borrowing from itself upon the security of the trust property. As noted above, the legislation stated that the purpose of the Act is to "codify the accepted practice of a creditor lending to the trustee of a land trust *** upon the security of trust property *** even though the creditor and the trustee are the same." The purpose is further stated to be "to foster and encourage the availability of financing for owners and developers of real estate." (Ill. Rev. Stat.

1983, ch. 148, par. 81(b).) The Act recites that for a number of years the legislature has required disclosures as to the ownership of the beneficial interest of land trusts in certain instances because it recognized that the "direction and control of the real estate was in the hands of the beneficiaries because the trustee acted solely as holder of the legal title and was subject at all times to the direction and control of the beneficiaries." (Ill. Rev. Stat. 1983, ch. 148, par. 81(a)(3).) The Act further recites that "[b]ecause the beneficiaries of land trusts retain the power of direction and control of the trust property, such beneficiaries will frequently select a financial institution as trustee simply because that institution will be asked by the beneficiaries to extend credit to the trust or to the beneficiaries secured by their interests in the trust." (Ill. Rev. Stat. 1983, ch. 148, par. 81(a)(4).) This clearly articulates the public purpose sought to be served by the legislation and the reasons such legislation was thought to be appropriate.

The findings by the legislature with regard to the attributes of land trusts and the facts of the case before us demonstrate that the rights of Sanelli which may have been impaired by the retroactive application of the Act are not significant. In fact, as noted below, in applying the balancing test they are minimal. We noted above that the Supreme Court, in *Allied Structural Steel*, explained that the severity of the impairment measures the height of the hurdle the State legislation must clear. All contracts are made subject to the authority of the State to safeguard the interests of the people. "Such authority is not limited to health, morals and safety. It extends to economic needs as well." (*Veix v. Sixth Ward Building & Loan Association* (1940), 310 U.S. 32, 38-39, 84 L. Ed. 1061, 1066, 60 S. Ct. 792, 795.) We hold that in view of the stated objectives of the legislature and the nature of Sanelli's rights affected, any impairment of those rights,

contractual or otherwise, was a reasonable exercise of the legislature's authority to provide for the public welfare and to safeguard the interests of the people.

In arriving at this conclusion, we have balanced the asserted rights of Sanelli against the general objectives sought to be achieved by the Act. In doing so we have considered several separate though related factors. We noted above that prior to *Zarkin* there had been no judicial determination that such transactions as were there condemned were not proper and that other judicial decisions had not foreshadowed the holding of *Zarkin*. Therefore, in this case Sanelli had at the most only a minimal expectation of any *Zarkin*-type contractual interests when the land-trust agreement was entered into or when the loan was made secured by the beneficiaries' interests. *Zarkin* was not decided until 1982, *i.e.*, after the trust was created and after the loan was secured. As one commentator observed, "the likelihood that [the beneficiaries] relied on the existing law *** is small." (Greenblatt, *Judicial Limitations on Retroactive Civil Legislation*, 51 Nw. U.L. Rev. 540, 565 (1956).) Another commentator contends that "only rational and legitimate expectations present a strong structural claim for protection" and "even these expectations can be overridden by utility and by various principles of justice." (Munzer, *A Theory of Retroactive Legislation*, 61 Tex. L. Rev. 425, 429 (1982).) It has also been stated "that the true test of the constitutionality of a retrospective law is whether a party has changed his position in reliance upon the existing law, or whether the retrospective act gives effect to or defeats the reasonable expectation of the parties." (Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 696 (1960).) Whether we choose to define Sanelli's interests under the prior law which were affected by the retroactive application of the Act as expec-

tations, reliance on the former law, or contractual rights, they can be viewed as no more than nominal rights. In *General Telephone Co. v. Johnson* this court, in determining the validity of a retroactively applied statute, considered whether the retroactive application was "harsh and oppressive," whether the affected party had changed its position in reasonable reliance on the prior law, and whether the affected individual had an opportunity to anticipate and avoid a loss resulting from the retroactive change. (*General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 379.) Sanelli has simply based his claim on *Zarkin* and has alleged nothing in the nature of the factors just discussed that would establish the unreasonableness of the retroactive application of the Act.

We should also consider the fairness of the impairment by the legislature of whatever rights Sanelli had under the law prior to the enactment. (See Greenblatt, *Judicial Limitations on Retroactive Civil Legislation,* 51 Nw. U.L. Rev. 540, 564 (1956).) In *Bank of Illinois in Mt. Vernon v. Bank of Illinois in Mt. Vernon* (1973), 13 Ill. App. 3d 711, 713, the court noted that, under the trust agreement, the trustee had the power to mortgage the property but only upon the direction of the beneficiary; that the trustee held both the equitable and legal title to the property; that the real power, the power to direct the trustee, was vested in the beneficiary; that the trustee could act only if told to do so by the beneficiary; that the trustee executed the mortgage not only with the full knowledge of the beneficiary, but also upon the latter's orders; and that under the circumstances it would be "fundamentally unfair to allow [the beneficiary] to direct the trustee to obtain the mortgage, obtain the proceeds thereof, and then escape payment because the trustee had followed its directions." The same rationale with regard to fairness is applicable in this case. The legislature in the Act recognized that the direction and con-

trol of the property and of the trustee were in the hands of the beneficiaries. (Ill. Rev. Stat. 1983, ch. 148, pars. 81(a)(3), (a)(4).) Sanelli has not alleged that the usual attributes of land trusts, as noted by the legislature and by the court in *Mt. Vernon,* were not present or applicable to the land trust in this case. We therefore conclude that it would not be unfair to apply the legislative enactment retroactively so as to impair whatever rights Sanelli may have acquired because of *Zarkin.*

Our holding is consistent with *Exxon Corp. v. Eagerton* (1983), 462 U.S. 176, 76 L. Ed. 2d 497, 103 S. Ct. 2296, the most recent contract-clause decision of the United States Supreme Court. *Exxon* involved an Alabama statute which increased the severance tax on oil and gas extracted from Alabama wells, exempted royalty owners from the tax increase, and prohibited producers from passing the increase on to their purchasers. Both the royalty provision and the pass-through provision were upheld against challenges under the contract clause. The court held that the pass-through provision did not violate the contract clause even though it affected contractual obligations of which the producers were the beneficiaries. The pass-through provision, the court explained, was a general regulatory measure designed to advance a "broad societal interest"—protecting consumers from excessive prices.

In the case at bar, retroactive application of Public Act 82—891 also furthers a "broad societal interest"—the continued availability of financing for owners and developers of real estate (Ill. Rev. Stat. 1983, ch. 148, par. 81(b)). If the impairment of the clear contractual rights of the producers caused by the statute in *Exxon* was constitutionally permissible, then it may be fairly said that the minimal impact arising from the retroactive application of Public Act 82—891 is likewise constitutionally permissible.

The situation here is distinguishable from *United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 52 L. Ed. 2d 92, 97 S. Ct. 1505. In 1962, the States of New York and New Jersey, which had earlier created the Port Authority of New York and New Jersey, entered into a statutory covenant. The covenant provided that, so long as any bonds previously issued by the Authority remained outstanding, neither State would use the revenues pledged as security for the bonds for any purposes other than permitted by the covenant. Both States passed legislation, effective in 1973, which prospectively repealed the covenant. Then in 1974, both States enacted legislation which retroactively repealed the covenant. Suit was brought challenging the constitutionality of New Jersey's 1974 repealing legislation. The stated purpose for the legislation had been the desire, in response to the developing energy crisis brought on by the shortage of oil, to encourage people to use public transportation instead of using their cars. The Supreme Court held that the legislation violated the contract clause of the United States Constitution. 431 U.S. 1, 32, 52 L. Ed. 2d 92, 116, 97 S. Ct. 1505, 1523.

Initially, *United States Trust Co.* is distinguishable because the New Jersey statute impaired the obligations of *the State's own contract*. This distinction was noted by the Supreme Court in *Exxon*. (462 U.S. 176, 192 n.13, 76 L. Ed. 2d 497, 561 n.13, 103 S. Ct. 2296, 2306 n.13.) Since the State's self-interest was at stake, the Supreme Court gave less deference than normal to the legislature's assessment of the reasonableness and necessity of the repealing legislation. See J. Nowak, R. Rotunda, J. Young, Constitutional Law 427 (1978).

The situation here is also distinguishable from *Allied Structural Steel Co. v. Spannaus* (1978), 438 U.S. 234, 57 L. Ed. 2d 727, 98 S. Ct. 2716. In that case, Minnesota had passed legislation which subjected certain pri-

vate employers to a charge if they terminated their pension plan or closed an office within Minnesota. Subsequent to passage of the statute, in a move that had been scheduled prior to the statutes enactment, Allied closed its Minnesota office. As a result of the move, several employees who had no vested pension rights under Allied's plan were nonetheless owed money under the new statute. Allied sued, and the Supreme Court held that the statute violated the contract clause of the Federal Constitution. (438 U.S. 234, 250-51, 57 L. Ed. 2d 727, 740, 98 S. Ct. 2716, 2725.) The court stated that the effect of the Minnesota statute, which retroactively modified Allied's contractual obligations, was severe. Allied had relied on the level of funding prescribed by its pension plan for more than a decade. In addition, the focus of the legislation was extremely narrow; it was not enacted to protect a "broad societal interest."

The situation here is also distinguishable from this court's decision in *George D. Hardin, Inc. v. Village of Mount Prospect* (1983), 99 Ill. 2d 96. From 1926 to 1930, the village of Mount Prospect had issued special-assessment bonds to contractors who constructed improvements in the village. The plaintiffs, special-assessment bondholders, sued the village alleging that the funds collected had been commingled or improperly transferred to other uses and that the village had not paid all the money it collected to the bondholders. The suit was dismissed on the basis of a 1981 statute which provided for the cancellation of all special-assessment bonds on which payments had been delinquent for 30 years and for the conversion of undisbursed funds to other corporate purposes. This court held that the statutory sections in question violated the contract clauses of both the United States Constitution and the Illinois Constitution. 99 Ill. 2d 96, 106.

The blanket cancellation of the bonds in *George D.*

*Hardin, Inc.* produced a significantly more prejudicial impairment of contractual rights than occurred in the case at bar. Furthermore, the justifications offered for the contractual impairments in that case, simplifying record keeping and eliminating the possibility of stale claims, were clearly insufficient bases for upholding the statute.

We hold that the retroactivity provision of Public Act 82—891 does not unconstitutionally impair Sanelli's contract rights under the United States Constitution. Also, for the same reasons that apply to the contract clause of the Federal Constitution, we hold that retroactivity provision is valid under the Illinois Constitution. (See *George D. Hardin, Inc. v. Village of Mount Prospect* (1983), 99 Ill. 2d 96.) Since the retroactivity provision does not unconstitutionally impair Sanelli's contract rights, we hold that the provision does not deprive him of property without due process of law under either the United States Constitution or the Illinois Constitution.

For the foregoing reasons, we affirm the order of the circuit court of Cook County dismissing Sanelli's complaint.

*Order affirmed.*

JUSTICE SIMON, dissenting:

The majority of this court now holds that the retroactivity provision of Public Act 82—891 does not violate the constitutional principles of separation-of-powers, due process, or impairment of private contract, as expressed in either the Constitution of the United States or that of the State of Illinois. To reach this conclusion, the majority misreads the holdings of a number of this court's prior decisions.

The majority begins by noting that "separation of powers is a more common ground for challenging the validity of retroactive statutes [in this State] than it is in

other jurisdictions" (108 Ill. 2d at 10). What the majority ignores is that the reason that separation-of-powers challenges are upheld more frequently in Illinois than in the Federal courts or in many other States is because, unlike a number of other State constitutions and also the Constitution of the United States, the Constitution of the State of Illinois contains an explicit separation-of-powers provision. It reads: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art II, sec. 1.) In the Constitution of the United States, separation of powers is expressed only by the organization of the Constitution into separate articles governing the legislative, the executive, and the judiciary. Furthermore, the relationship between the branches of government in the Federal system is affected by the fact that the Federal district courts are created by the Congress, which therefore has the power to withdraw jurisdiction over certain subject matters from them. Much of the textual material relied on by the majority pertains to the Federal system, and this explains why it is irrelevant. Also for this reason, the majority's reliance on a Federal case, *Seese v. Bethlehem Steel Co.* (4th Cir. 1948), 168 F.2d 58, is inappropriate to a decision based on the Illinois Constitution (108 Ill. 2d at 17). Similarly, reliance on cases from other States is inapposite unless the majority can show that the constitutions of the other States contain a similarly worded separation-of-powers clause which has been interpreted by the highest courts of those States analogously to the interpretation which this court has placed on the separation-of-powers clause in Illinois.

It is simply untrue either that the "essence" of this court's separation-of-powers holdings is that "[w]hat the General Assembly may not do is pass a statute in an attempt to change the result of a decision which has been

finally decided as between the parties to that case" (108 Ill. 2d at 10) or that the legislature's power to change the law retroactively "extends to decisions in which the law changed by the legislature resulted from \*\*\* a reviewing court's interpretation of the common law" (108 Ill. 2d at 10). The majority opinion does not cite a single Illinois opinion in which this court has upheld the legislature's power to retroactively change the law as announced by this court on a question of common law.

In contrast to what the majority would have us believe, this court has previously recognized the distinction in the legislature's power to act retroactively when dealing with statutes as contrasted to the common law. In *Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, this court held that a repose provision in a medical malpractice action could not be applied retroactively so as to bar plaintiffs' causes of action before they arose. This was despite the fact that in *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, the court held that a statute of limitations could be retroactively amended by the legislature. In *Moore* this court noted: "This court held [in *Orlicki*] that the legislature, which created the rights under the Liquor Control Act, had the power to repeal those rights." (95 Ill. 2d 223, 230.) Distinguishing *Orlicki*, the court went on to say in *Moore*: "[T]hese plaintiffs' actions are negligence actions which sound in tort and were recognized at common law; they are not statutorily created remedies." 95 Ill. 2d 223, 231.

Treating this court's previous separation-of-powers decisions as the majority now construes them not only ignores the doctrine of *stare decisis* but also limits them so severely as virtually to strip all continuing vitality from them. In particular, *Roth v. Yackley* (1979), 77 Ill. 2d 423, and *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, are so eviscerated as to be meaningless. The majority tells us that *Roth* and *Cohn* applied only to final judg-

ments and that both decisions were limited to protecting parties in whose favor final judgments had been entered in specific cases against legislative attempts to change the decisions in those cases. A review of the facts in both *Roth* and *Cohn* indicates, however, that there were no final judgments in either case, that the wording of both opinions clearly extends to other parties, and that if the majority opinion in this case is correct, this court would not have invalidated the legislation at issue either in *Roth* or in *Cohn*.

The circumstances in both *Roth v. Yackley* and *In re Marriage of Cohn* were that a legal controversy was properly before this court, the court directly addressed a particular legal issue, and the legislature, unhappy with the result, attempted to run the reel backward and retroactively change the precise result reached by this court. This court held that in doing so the legislature each time overstepped its constitutional authority.

*Roth v. Yackley* consisted of two separate class actions seeking the return of fines and costs paid incident to the grant of probation for violations of section 10 of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 710) and section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1410). In *People v. DuMontelle* (1978), 71 Ill. 2d 157, this court had held that the imposition of fines and costs as a condition of probation was not authorized by section 10 of the Cannabis Control Act. *DuMontelle* arose in Kankakee County, while *Roth* was filed in La Salle County, and there is no indication whatsoever in the *Roth* opinion that the defendant in *DuMontelle* was included as a plaintiff in *Roth*. The plaintiffs in *Roth*, relying on *DuMontelle*, argued that the fines and costs they had previously paid had been improperly collected and should be returned. Three months after *DuMontelle*, and after *Roth* had been filed, the Illinois legislature passed an

amendatory act which changed both section 10 and section 410. It stated that the changes are "declaratory of existing law and are therefore applicable in relation to events which occurred before the effective date of this amendatory Act" and that the terms and conditions of probation specified in the Act "were in effect before the effective date of this amendatory Act." (Pub. Act 80—1202, sec. 3, eff. June 30, 1978.) On the basis of the amendment, the circuit court dismissed both class action complaints. This court reversed the circuit court, observing:

> "[I]t is manifest that the amendatory act changed the statutory language and prior law as determined by this court in *DuMontelle* from the clear import of the original statutory language. This court's explication of the statute had become, in effect, a part of the statute until the General Assembly changed it. [Citations.]
>
>    ***
>
> The General Assembly's declaration that the amendatory act applies to events which occurred before the effective date of the amendatory statute represents a legislative attempt to retroactively apply new statutory language and to *thereby annul a prior decision of this court.* This is an assumption by the General Assembly of the role of a court of last resort in contravention of the principle of separation of powers embodied in article II, section 1, of the Illinois Constitution of 1970 ***. The cases cited by the State do not recognize that the General Assembly may retroactively overrule a decision of a reviewing court. Instead they recognize only the power of the legislature to establish laws prospectively and to alter for future cases interpretations of statutes by reviewing courts. [Citations.]
>
> In sum, we find that the General Assembly cannot constitutionally overrule a decision of this court by declaring that an amendatory act applies retroactively to cases decided before its effective date." (Emphasis added.) *Roth v. Yackley* (1979), 77 Ill. 2d 423, 428-29.

Contrary to the majority's contention, *Roth* could not have been limited to cases in which final judgments had been entered because there were no final judgments in *Roth*. The only judgments which had been entered against the class members which the plaintiffs in *Roth* sought to represent were in criminal cases in which they had been defendants and in which they had been taxed fees and costs. Since the time for appealing those judgments or moving to vacate them had passed, the only vehicle for recovering fees and costs was a new and separate civil action, such as the class actions in *Roth*. *Roth* was a new case with new parties in which no final judgment had been entered, and in which this court held that applying the new statute instead of the law announced in *DuMontelle* would violate the separation-of-powers doctrine. Thus, this court, in referring in *Roth* to "cases decided before its effective date" (77 Ill. 2d 423, 429), was referring to *DuMontelle* and not, as the majority states, to the criminal cases in which the class plaintiffs in *Roth* had been previously involved. Reading the sentence in which that language appears in conjunction with the paragraph quoted above indicates that it can have no other meaning than reference to the decision in *DuMontelle,* and that the decision referred to in that paragraph by the words "cases decided before its effective date" (77 Ill. 2d 423, 429) was *DuMontelle.* This court acknowledged that it was *DuMontelle,* a decision of a reviewing court, and not judgments of circuit courts that *Roth* referred to when in *Cohn* it noted that in *Roth* the legislature invaded the province of the judiciary by retroactively overruling a decision of a reviewing court (93 Ill. 2d 190, 204).

The majority's narrow reading of *Roth* here is further belied by previous interpretations of *Roth* by this court. In *People v. Rink* (1983), 97 Ill. 2d 533, 541, the court said:

"Of course, the legislature, after a final judicial interpretation of legislative intent, cannot effect a change in that construction by a later declaration of what it did intend (*In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 203; *Illinois Bell Telephone Co. v. Fair Employment Practices Com.* (1980), 81 Ill. 2d 136, 142; *Roth v. Yackley* (1979), 77 Ill. 2d 423, 428-29)."

Thus, the majority's contention that *Roth* is limited to cases in which final judgments have been entered is totally at odds with our other interpretations of *Roth*.

If the majority's interpretation of *Roth* is untenable in view of the facts and circumstances of that case, the way it handles *Cohn* is even more incomprehensible in view of what actually happened in that case and of the opinion adopted by this court. Once again, the majority tells us that *Cohn* was limited to final judgments and to the parties in that case, but once again *there were no final judgments in Cohn itself,* at least until this court decided the case more than 14 months after the legislation *Cohn* struck down became effective.

*In re Marriage of Cohn* (1982), 93 Ill. 2d 190, held that the General Assembly could not enact legislation to retroactively validate judgments that were invalid as a result of an appellate court decision in that case. (93 Ill. 2d 190, 206.) Throughout the *Cohn* opinion, this court stated repeatedly that the legislature could not affect the decision of a "reviewing court" of this State. Yet that "reviewing court" in *Cohn* was the appellate court, an intermediate level court which does not definitively state the law of the State of Illinois. The *Cohn* case was still on direct appeal to this court when the legislature acted. In contrast to the case with which we now deal, the Supreme Court of Illinois had not yet even spoken, and there was no final judgment, even with respect to the parties to *Cohn* itself.

To understand the bearing of *Cohn* on this case, it is

essential to examine the course of events in that case. The trial judge had entered a bifurcated judgment of dissolution of marriage *nunc pro tunc,* reserving matters of custody and disposition of property for a later date. Some time later, the wife petitioner moved to have the order vacated on the ground that the court had no authority either to enter the judgment of dissolution before maintenance, child support, and other property rights were determined or to enter the order *nunc pro tunc.* The appellate court held in an opinion filed on April 20, 1981, that section 401(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 401(3)) allows reservation of child custody, support, maintenance or property disposition only under " 'appropriate circumstances,' " and vacated the judgment. (*In re Marriage of Cohn* (1981), 94 Ill. App. 3d 732, 739-40.) The husband filed a timely petition for leave to appeal which this court allowed.

After the appellate court decision and while the case was on appeal to this court, the Illinois legislature amended section 401(3), effective August 14, 1981, to retroactively validate the issuance of a bifurcated judgment. The amendment specifically stated that such judgments entered prior to the amendatory act were valid as of the date of entry. As in *Roth,* this court held that "the legislature invaded the province of the judiciary by retroactively overruling a decision of a reviewing court." (93 Ill. 2d 190, 204.) In *Cohn,* this court extensively quoted portions of *Roth* which indicated that the legislature cannot retroactively overrule the decision of a reviewing court. 93 Ill. 2d 190, 203-04.

The majority now attempts to tell us that the reason the legislation in *Cohn* was invalid was because the legislature attempted to validate *all judgments* that were *entered prior to the effective date* of the amendment (emphasis in original) (108 Ill. 2d at 16). So far as judgments

in other cases were concerned, if no objection was made and no appeal was taken, those judgments were final and did not need the assistance of the legislature to validate them. This court acknowledged as much in *Cohn* when it stated that the decision would "not affect the validity of bifurcated judgments that were entered under the statute prior to its amendment by Public Act 82—197, where no objection on this basis was made and where no appeal was taken. In such cases, the mandatory provisions of section 401(3) (Ill. Rev. Stat. 1977, ch. 40, par. 401(3)) are deemed to have been waived." (*In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 207.) What *Cohn* really stands for is set forth in the following portions of the opinion:

> "In this case, as in *Roth*, the legislature invaded the province of the judiciary by retroactively overruling a decision of a reviewing court. This constitutes a violation of article II, section 1, of the Illinois Constitution, which embodies the principle of separation of powers." (93 Ill. 2d 190, 204.)

> "[T]he portion of Public Act 82—197 attempting to validate prior judgments of dissolution was an unconstitutional attempt to retroactively invalidate the action of a reviewing court." 93 Ill. 2d 190, 207.

The essential point about *Cohn*, however, is how this court's decision and the legislation impacted upon the husband and wife in that case. This court did not dispose of *Cohn* until October 22, 1982. Thus, *Cohn* was a pending case when the legislation became effective more than a year earlier.

Any doubt that the case was pending when the legislation amending section 401(3) became effective (August 14, 1981) is eliminated by the following significant dates in *Cohn*:

| | |
|---|---|
| 1/27/81 | Appellate court opinion filed. |
| 4/20/81 | Appellate court opinion filed on rehearing. |

| | |
|---|---|
| 5/26/81 | Petition for leave to appeal filed in Supreme Court. |
| 10/19/81 | Leave to appeal allowed. |
| 6/22/82 | Submitted as agenda 53. |
| 10/22/82 | Supreme court opinion filed. |
| 11/19/82 | Mandate issued. |

If the majority is right in this case, why did the statutory amendment not govern this court's decision in *Cohn*? Inasmuch as the legislation did not govern this court's decision in *Cohn*, how can the legislation at issue in this case defeat Sanelli's claim when it also was pending before the legislation was enacted? This question is especially appropriate because the legislation in *Cohn* upset only an appellate court opinion while the legislation here upsets a supreme court opinion.

*Cohn* is actually more like the long line of curative-act cases in which this court has allowed the legislature to correct an inadvertent mistake in a statute, ordinance, or legal instrument than it is like *Roth*. Even so, this court in *Cohn* went to great lengths to rely on *Roth* and to distinguish the most recent curative-act case, *Schlenz v. Castle* (1981), 84 Ill. 2d 196. (*In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 204-05.) In addition, the court in *Cohn* also distinguished *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, on which the majority now relies in an attempt to escape the holding in *Cohn* (108 Ill. 2d at 11-12). The only plausible construction of the *Cohn* holding is that despite the availability of the curative-act doctrine in Illinois, this court believed that by attempting to retroactively overrule the decision of even an intermediate-level reviewing court, the legislature had violated the Illinois constitutional principle of separation of powers. Thus, the conclusion in this case that, "[i]n summary, the General Assembly may enact retroactive legislation which changes the effect of a prior decision of a

reviewing court with respect to cases which have not been finally decided" (108 Ill. 2d at 19) must mean that *Cohn* is *sub silentio* overruled. The two cannot stand together, for the majority here cloaks the legislature with a supremacy over judicial decisions which it was clearly denied by *Cohn*, as well as by *Roth*.

The bank argues, and the majority agrees, that this case is more like *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, or *Schlenz v. Castle* than it is like *Roth* or *Cohn*. A brief review of the cases exposes the fallacy of this claim.

The *General Telephone* case emphasizes the very feature which distinguishes it from this case. In *General Telephone,* this court upheld the retroactive application of a tax statute. The court quoted *Roth v. Yackley,* stating " 'the General Assembly cannot constitutionally overrule a decision of this court by declaring that an amendatory act applies retroactively to cases decided before its effective date.' " (*General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 383, quoting *Roth v. Yackley* (1979), 77 Ill. 2d 423, 429.) The court then went on to explain that in *General Telephone* there was no separation-of-powers violation because there had been no prior circuit court decision on the question resolved by the statute. (103 Ill. 2d 363, 383-84.) The majority now attempts to represent that there had been a prior Illinois Supreme Court case dealing with the issue, but that the legislature could overrule that case without violating the separation-of-powers clause (108 Ill. 2d at 16). That is not what *General Telephone Co.* held. The facts reveal that there had been no prior relevant judicial decision at any level. *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, to which the majority refers, did not control because it was irrelevant. *Caterpillar* involved an income tax question, while *General Telephone* and the disputed statute involved the invested capital tax. In fact,

this court pointed out in *General Telephone* that the legislation in question did not affect the holding in *Caterpillar* or the income tax liability of the parties to that suit. (103 Ill. 2d 363, 384.) It is incongruous that this court, a scant seven months after the *General Telephone* decision, now attempts to use it as controlling authority in this separation-of-powers case.

*Schlenz* is the latest in a line of cases in which this court approved the legislature's authority to enact a curative statute to correct a defect in earlier legislation. *Schlenz* is not a case like this one in which the legislature attempted to vitiate retroactively the common law decision of a reviewing court. Because *Schlenz* is so clearly distinguishable from this case, the continuing vitality of the *Schlenz* rationale would not be affected by a holding in this case that the legislature violated the Illinois constitutional principle of separation of powers by retroactively overruling a decision of this court with respect to the common law, just as the vitality of the *Roth* case was not affected by the clearly distinguishable decision in *Schlenz*.

*Schlenz* upheld a statute validating taxes on real and personal property despite the failure of the assessor to publish the assessments within the time provided by a prior statute. Previously in *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, the court held that the publication dates under the prior statute were mandatory and that therefore the taxes were invalid. This court clearly viewed the legislation in *Schlenz* as a curative or validating statute which corrected a defect in earlier legislation in an area within the legislature's control. *Roth* was distinguished in the following manner:

"The General Assembly did not amend section 103 of the Revenue Act, and *section 318.1 [of the Revenue Act] does not attempt to attribute to section 103, at the time of our opinion in Andrews, a meaning different from that de-*

*clared in that opinion.*" (Emphasis added.) (*Schlenz v. Castle* (1981), 84 Ill. 2d 196, 206-07.)

In this case, by contrast, no statute was originally involved and the legislature's aim was to attribute to existing legal relationships a legal significance different from that which this court in *Home Federal Savings & Loan Association v. Zarkin* (1982), 89 Ill. 2d 232, declared to exist. It is significant that this court in *Cohn* distinguished *Roth* and *Cohn* from *Schlenz* in the same manner in which this court distinguished *Roth* in *Schlenz* (93 Ill. 2d 190, 204) and in the same manner as I now maintain *Schlenz* is distinguishable from this case. In *Cohn* the court concluded:

"In *Schlenz*, then, the legislature did not attempt to retroactively interpret the statute. In the instant case like *Roth* and unlike *Schlenz* the legislature by amendment attempted to attribute to the original statute, at the time of the reviewing court's opinion, a meaning different than that declared in the opinion." 93 Ill. 2d 190, 205.

As noted in the majority opinion, *People v. Holmstrom* (1956), 8 Ill. 2d 401, is an earlier case which is indistinguishable from *Schlenz*. On similar facts involving the levy of taxes, this court upheld legislation validating assessments which had not been published according to the procedure mandated by the earlier statute. The majority's opinion is undermined by its reliance upon the very language which identifies the legislation in issue in *Holmstrom* as permissible curative legislation, prevents it from being a separation-of-powers violation, and distinguishes it from *Roth, Cohn,* and the case at bar: " '[I]nasmuch as the legislature had the power to permit the levy of the taxes without requiring the assessments to be published, it was likewise within its power *to cure irregularities in publication by the validating act.*' " (Emphasis added.) (108 Ill. 2d at 12, quoting *People v. Holmstrom* (1956), 8 Ill. 2d 401, 405-06.) The statute in

issue in this case is obviously not curative, for there was no existing statute for it to cure.

*Worley v. Idleman* (1918), 285 Ill. 2d 214, on which *Schlenz* is based, is another case in which the legislature enacted a statute to cure a defect in an earlier instrument in an area which was within the authority of the General Assembly. The curative act was held valid.

In addition to the distinguishing features pointed out above in the cases on which the bank relies, the controlling consideration is that in each of those cases the court applied a statute which amended an existing statute and not, as in this case, a statute which retroactively overruled the common law as declared by this court.

The out-of-jurisdiction cases on which the majority relies, *Chevron Chemical Co. v. Superior Court* (1982), 131 Ariz. 431, 641 P.2d 1275, and *Peterson v. City of Minneapolis* (1969), 285 Minn. 282, 173 N.W.2d 353 (108 Ill. 2d at 17-19), not only are not controlling, but also are clearly inapposite.

*Peterson* concerned legislation adopting comparative negligence in the place of contributory negligence. The legislation did not seek to nullify any court decision or to establish that contributory negligence had never been the law of Minnesota. On that basis alone, it is distinguishable from Public Act 82—891. Moreover, the Minnesota court was not confronted, as we are, with an explicit constitutional provision establishing separation of powers. *Chevron* was concerned with the amendment of a statute changing an interpretation the Arizona Supreme Court had previously given it. It is similar in scope to *Roth v. Yackley* but reaches a different conclusion than this court did in *Roth v. Yackley*. In any event *Chevron* did not involve the distinguishing feature of this case, an attempt by the legislature to erase retroactively a decision of the reviewing court based on the common law rather than a statute.

Because of its reliance on inapposite cases and misreading of *Roth* and *Cohn*, the majority has ignored what were, until now, basic constitutional principles. The judicial branch declares the law as it is, until the legislature changes the law for the future. Even if the legislature is dissatisfied with a decision which this court has reached, the Illinois Constitution provides no mechanism by which the legislature can rewrite history and retroactively undo the effect of that decision. The legislature can no more abrogate a court decision which it finds troublesome than this court can refuse to uphold a properly enacted and constitutional statute with which it disagrees.

The legislature was free to enact Public Act 82—891 to operate from the effective date of the Act forward. It is within the General Assembly's prerogative to decide that a particular practice is not in the best interests of the public and to enact legislation to correct that practice for the future. However, when the General Assembly attempts to change the law retroactively by purporting to overrule a decision of a reviewing court, the statute violates the principle of separation of powers, and the purported retroactive legislation is unconstitutional.

After its attempt to dispose of the separation-of-powers challenge, the majority is equally cavalier in disregarding the plaintiff's claims that the due process and contract clauses of both the Illinois and United States constitutions have been violated. Whatever analysis is used, the traditional Illinois vested-rights approach, or the balancing test preferred by the majority, the majority indulges in two major mischaracterizations in order to reach its desired result.

First, there is the size of the hurdle which the challenged legislation must clear (108 Ill. 2d at 21), *i.e.*, the degree of impairment of the contract involved. The ma-

jority, in describing this as minimal, ignores the fact that the *Zarkin* opinion dealt with the duties defining the relationship between a land trustee and the holder of the beneficial interest in the land trust. By retroactively removing the protection offered by *Zarkin,* Public Act 82—891 cut the heart out of the land-trust contract; there was virtually nothing left of any value. What remains is nothing more than what the bank argued unsuccessfully in *Zarkin* the land trust was—a shell.

Second, the majority must ascribe an important public benefit to the legislation. Yet, there is no public purpose here at all, only a private benefit to banks, one of the parties to a private contract. The majority opinion goes to great lengths to establish the legislature's interest in regulating the banking industry, yet nothing the majority advances demonstrates any public purpose that will be served by applying the legislation retroactively.

The majority's assertion that any impairment of Sanelli's rights "was a reasonable exercise of the legislature's authority to provide for the public welfare and to safeguard the interests of the people" is unsupportable (108 Ill. 2d at 24). The factors it relies on to justify this conclusion consist entirely of elements of the private relationship between Sanelli and the bank, his trustee. How the elements of strictly private negotiations and contractual arrangements between Sanelli and the bank can be regarded as enhancing "the public welfare" and safeguarding "the interests of the people" the majority never explains. All this opinion accomplishes is to safeguard banks from litigation over their past conduct. So far as their future conduct is concerned, no one is contesting the right of the legislature to declare that land trustees are no longer required to act in the manner this court prescribed in *Zarkin.* But there is no valid explanation in terms of "the public welfare" and "the interests of the people" as to why the legislature can retroac-

tively interfere with the existing rights of private parties to a private agreement. Whatever need there is for the legislation to operate prospectively, the only purpose of its retroactive feature is to free banks from liability based on their past transgressions.

The majority notes that although "the courts" often analyze due process and contract clause issues in terms of "vested rights," the term vested rights is "conclusory" (108 Ill. 2d at 20). It is true that some courts have spoken in conclusory fashion of vested rights. What is also true, however, is that the entire jurisprudence of Illinois in these areas has developed using the vested-rights terminology. Rejecting that terminology offhand, the majority is conveniently able to ignore cases which conflict with the conclusion the majority wishes to reach. By relying on these precedent cases, it is possible to identify just what right is involved in this case and exactly when that right vested. Sanelli's accrued cause of action against the bank is a vested right, and the retroactivity section of Public Act 82—891 impermissibly interfered with that right, thereby violating both the due process and contract clauses of the Illinois and United States constitutions.

The general rule in Illinois is that retroactive operation of legislation is not *per se* unconstitutional, but becomes unconstitutional when it interferes with due process or contract rights. *Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 187; *Peoples Store v. McKibbin* (1942), 379 Ill. 148; *People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367; *Board of Education v. Blodgett* (1895), 155 Ill. 441.

The relationship between Sanelli and the bank was established by the creation of the land-trust agreement. In *Home Federal Savings & Loan Association v. Zarkin* (1982), 89 Ill. 2d 232, this court established that, as in any other trust agreement, the crux of that relationship is the fiduciary duty which is owed by the trustee to the

holder of the beneficial interest. Under *Zarkin* and before the enactment of Public Act 82—891, a conflict of interest was created when the trustee also became a secured creditor, loaning money on the security of the trust property. This raises the possibility that, when the interests of the holder of the beneficial interest and the interests of the creditor conflict, the trustee will act to protect its own interest as creditor rather than abiding by its fiduciary duty as trustee. A trustee cannot deal with trust property for its own benefit (*Central Standard Life Insurance Co. v. Gardner* (1959), 17 Ill. 2d 220, 235), cannot place himself in a position where it is difficult to be honest (*Bennett v. Weber* (1926), 323 Ill. 283, 293-94), and cannot purchase the trust property in its own behalf (*Victor v. Hillebrecht* (1950), 405 Ill. 2d 264, 268; *Bennett v. Weber* (1926), 323 Ill. 283, 293-94). The trustee who is also the mortgagee of land cannot purchase tax titles and hold the property for its individual benefit. *O'Halloran v. Fitzgerald* (1873), 71 Ill. 53.

There can be no doubt that Illinois views an accrued cause of action as a vested right. (*Board of Education v. Blodgett* (1895), 155 Ill. 441; *Wilson v. All-Steel, Inc.* (1981), 87 Ill. 2d 28.) Sanelli's right vested when the bank foreclosed the loan and purchased the beneficial interest in the trust property for its own account at a price below the fair market value. In addition, since the land trust is a contract, a breach of fiduciary duty is also a breach of contract. This cause of action for breach of contract also vested when the bank took action inconsistent with its obligations as a fiduciary.

In his complaint, Sanelli alleges that the bank purchased the property at a price below its market value. According to *Zarkin*, the burden of proving that the transaction was fair, *i.e.*, that the purchase price was not below market, and that therefore no breach of fiduciary duty occurred, is on the fiduciary bank. Of course, if

the bank meets that duty, then the bank will prevail in the lawsuit, but that is irrelevant. It is the right to attempt to prove his claim, *i.e.*, to survive a motion to dismiss, with which the legislature cannot interfere.

This analysis is consistent with Federal law regarding impairment of contract. As the majority notes, the contract clause does not guarantee against all governmental interference with private contracts. States can invoke their police power to safeguard the welfare of their citizens for legitimate public purposes. As a result, the value of some private contracts may be reduced, or even eliminated entirely. (*Exxon Corp. v. Eagerton* (1983), 462 U.S. 176, 190, 76 L. Ed. 2d 497, 510, 103 S. Ct. 2296, 2305, quoting *United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 22, 52 L. Ed. 2d 92, 109-10, 97 S. Ct. 1505, 1517-18.) The means chosen to safeguard the public interest must be reasonable and appropriate. *United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 22, 52 L. Ed. 2d 92, 109-10, 97 S. Ct. 1505, 1518.

In the most recent contract-clause case, the court upheld an Alabama statute which increased the severance tax on oil and gas, exempted royalty owners from the increase, and prohibited producers from passing the increase on to purchasers. (*Exxon Corp. v. Eagerton* (1983), 462 U.S. 176, 76 L. Ed. 2d 497, 103 S. Ct. 2296.) The court held that the royalty provision did not affect any contractual obligation of which the producers were beneficiaries (462 U.S. 176, 187-88, 76 L. Ed. 497, 508, 103 S. Ct. 2296, 2304) and that the pass-through provision was permissible even if it impaired existing contracts to some extent because it was a general regulatory measure designed to safeguard the interests of the public during a period of severe inflation. The incidental effect on contracts did not invalidate it. (462 U.S. 176, 194, 76 L. Ed. 2d 497, 512, 103 S. Ct. 2296, 2307.) Under the criteria announced in *Exxon Corp. v. Eagerton*

the retroactivity provision of Public Act 82—891 which is at issue in this case is an unconstitutional impairment of contract; contractual rights are affected, and that effect is the main purpose of, not an incident to, the legislation.

The situation here is distinguishable from instances of permissible State regulation which either affect private contracts only incidentally (*e.g., Exxon Corp. v. Eagerton* (1983), 462 U.S. 176, 76 L. Ed. 2d 497, 103 S. Ct. 2296) or are necessary in a national emergency (*e.g., Home Building & Loan Association v. Blaisdell* (1934), 290 U.S. 398, 78 L. Ed. 413, 54 S. Ct. 231). Public Act 82—891 did not concern a general regulation of rates or safety conditions which incidentally affected private contracts. The sole purpose of the retroactivity provision of the Act was to change the rights and duties of the parties to existing contracts. While the legislature is authorized to regulate such contracts prospectively, interference with existing contracts of the type involved here so extensively changes the nature of the relationship between beneficiary and trustee and so reduces the value of the land-trust agreement to the beneficiary that the retroactive application of the statute is an impermissible impairment under the contract clause.

Despite protestations to the contrary by the bank and by the Illinois Bankers Association, the record contains no evidence that a fiscal or banking emergency in Illinois either has occurred as a result of *Zarkin* or will occur if Public Act 82—891 is not given retroactive effect. This legislation was not an attempt to protect the public at large, or as the majority phrases it "to provide for the public welfare and to safeguard the interests of the people" (108 Ill. 2d at 24), but rather an effort to enhance the value of the creditor-trustees' contracts at the expense of the beneficiaries. This is impermissible under the contract clause.

This analysis is consistent with *United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 52 L. Ed. 2d 92, 97 S. Ct. 1505, in which the Supreme Court invalidated New Jersey legislation which retrospectively impaired the rights of bondholders. The Port of New York Authority issued bonds during the 1920's to finance the building of bridges. In 1962, New York and New Jersey enacted a statutory covenant providing that as long as any of the bonds remained outstanding, the revenues pledged in whole or in part as security for the bonds would not be used for any purposes other than those set out in the statute. In 1972, both States enacted a prospective repeal of the covenant, and in 1974, both States made the repeal retroactive. The retroactive repeal by the New Jersey legislature was challenged in *United States Trust Co.* At the time, there was a shortage of imported oil and a nationwide energy crisis. The New York and New Jersey legislation was allegedly designed to divert resources from encouraging private automobile use to developing mass-transportation facilities which would serve legitimate public needs by providing transportation while at the same time conserving resources.

Notwithstanding the legitimate public purpose, which is not present in this case, the Supreme Court in *United States Trust Co.* concluded that the contract clause prohibited this retroactive interference with contractual rights. (431 U.S. 1, 22, 52 L. Ed. 2d 92, 109-10, 97 S. Ct. 1505, 1518.) Here, where there is no public purpose, the impairment of contract rights is even more blatantly violative of the Constitution.

This analysis is also consistent with *Allied Structural Steel Co. v. Spannaus* (1978), 438 U.S. 234, 57 L. Ed. 2d 727, 98 S. Ct. 2716. In that case, the Supreme Court invalidated a Minnesota statute requiring certain private employers to pay a pension-funding charge upon termination of the plan or closing of an office within the

State. Pursuant to a plan it adopted before the statute was enacted, Allied closed its Minnesota plant, as a result of which several employees who had not qualified under its pension plan were nonetheless owed money under the new statute, and the company was assessed a substantial charge. The statute was held to be an invalid impairment of contract because it did not address a broad societal interest such as a national, social or economic emergency, imposed new regulation in a previously unregulated area, worked a permanent and severe change in contractual relationships, and was not aimed at all employers. (438 U.S. 234, 249-50, 57 L. Ed. 2d 727, 739-40, 98 S. Ct. 2716, 2725.) This case fits the *Allied Structural Steel* criteria. There was no pressing social or economic problem in Illinois which required correction by the legislature, there had been no previous State regulation of the nature of the relationship between trustees and beneficiaries, and obviously, the statute worked a severe and permanent change in that contractual relationship.

This court recently invalidated under the contract clause an Illinois statute which allowed a municipal treasurer to cancel municipal bonds secured by revenues which had been delinquent for more than 30 years. (*George D. Hardin, Inc. v. Village of Mount Prospect* (1983), 99 Ill. 2d 96.) Plaintiffs were holders of municipal bonds issued in the years 1926-30. Their suit, alleging that funds collected had been commingled or improperly transferred, and that bondholders had not been paid all sums collected, was dismissed on the basis of a 1981 statute. Reasoning that *George D. Hardin, Inc.* was controlled by *United States Trust Co.*, this court reversed. The court noted that the blanket cancellation of the bonds permitted by the statute offered no protection whatever to the bondholders, and that the justifications offered for the legislation were not as compelling as

those held insufficient in *United States Trust Co. George D. Hardin, Inc. v. Village of Mount Prospect* (1983), 99 Ill. 2d 96, 105-06.

The conclusion that the contract clause was violated in this case follows from the holding in *George D. Hardin, Inc.* Public Act 82—891, as retroactively applied, offers no protection whatever to the holders of beneficial interests in land trusts. The justification offered here is even less compelling than that offered in *George D. Hardin, Inc.,* the elimination of municipal record keeping and possible municipal liability. Here, the burden of the fiduciary duty falls on private parties, not on any government agency. The justification proposed by the majority under the guise of furthering a "broad societal interest" (108 Ill. 2d at 26) is the need for "the continued availability of financing for owners and developers of real estate." This need, however, even if furthered by the legislation in question, speaks only to the future. Undoing the past will not and does not contribute in any measure to the future availability of financing for real estate acquisition or development. While the majority's rationale might be sufficient basis for prospective litigation, even though financing for real estate acquisition and development is obtained in the great majority of States without the use of land trusts, it is nevertheless insufficient to justify the impairment of existing contracts.

Turning now to the balancing test which the majority chooses as an alternative to the traditional Illinois analysis, it is clear that the same two flaws exist. The majority fails to specify a public purpose sufficient to justify the legislature's retroactive, rather than prospective, interference with a private contractual relationship, and it dramatically minimizes the devastating effect which the retroactivity provision of Public Act 82—891 had on the value of the land-trust contract to holders of the benefi-

cial interests in land trusts.

The majority stresses that prior to *Zarkin* it had been a long-standing practice for banks to act as both land trustee and secured creditor of the same trust (108 Ill. 2d at 21). What the majority overlooks is that because a practice has existed for many years does not make it legal. Before 1954, segregated schools had existed in the United States as long as the country had existed. However, the Supreme Court made it plain that longevity of a practice does not make it the law. *Brown v. Board of Education* (1955), 349 U.S. 294, 99 L. Ed. 1083, 75 S. Ct. 753.

The majority also characterizes this court's decision in *Zarkin* as a surprise which had not been "foreshadowed" either in this court or the appellate court. (108 Ill. 2d at 21.) The fact is that *Zarkin* was a unanimous decision of this court which was completely consistent with prior Illinois trust law, as *Zarkin* itself explains. *Bank of Illinois in Mt. Vernon v. Bank of Illinois in Mt. Vernon* (1973), 13 Ill. App. 3d 711, relied on by the majority, was an appellate level decision which did not address the issue here or in *Zarkin*. *Bank of Illinois* held that a beneficiary of a land trust who directed a land trustee to execute a mortgage was bound by that direction and then followed the traditional rule that a beneficiary whose title was subject to a mortgage could not escape that mortgage by itself conveying title to a third party. There is nothing in *Zarkin* or in Sanelli's claim inconsistent with that holding; unlike the beneficiary in *Bank of Illinois,* neither the Zarkins nor Sanelli challenged the validity of the mortgages they directed their land trustees to execute. Their complaints relate to the conduct of the banks in seeking to enforce the mortgages. The majority states that Sanelli could not have relied on the *Zarkin* decision when he established his trust. That is true. However, Sanelli had a right to rely on this court's abil-

ity to correctly state and to follow the law.

In support of its repeated claim that the interference with contract involved here is minimal, the majority states that the bank, as trustee, could only do as the beneficiary instructed. That is a hard position to maintain where, as here, the beneficiary certainly did not instruct the bank to sell the beneficial interest to itself at a price allegedly below market value. Further, what appears to the majority to be a minimal interference with contract does not, I am sure, appear so minimal to the beneficiary who has lost his home.

Finally, the majority suggests that the contract-clause and due-process aspects of this case are controlled by *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, rather than by *George B. Hardin.* (108 Ill. 2d at 24-25.) I cannot understand how the majority can now propose that the balancing test used in *General Telephone Co.* controls here, when that case relied on a test specifically tailored to the evaluation of retroactive tax legislation. (See 103 Ill. 2d 363, 379, and sources cited therein.) Assuming, *arguendo*, that this irrelevant test controlled, still, it is clear that retroactive application of this statute is indeed "harsh and oppressive" (103 Ill. 2d 363, 379) as far as land-trust beneficiaries are concerned.

For these reasons, I conclude that the retroactive application of Public Act 82—891 violates the separation-of-powers clause of the Illinois Constitution, as well as the due process and contract clauses of both the Illinois Constitution and the Constitution of the United States. Therefore, I dissent.

CLARK, C.J., and WARD, J., join in this dissent.