JULIUS PETERSON, ALSO KNOWN AS HELMER J. PETERSON, v. CITY OF MINNEAPOLIS.

173 N. W. (2d) 353.

December 10, 1969—No. 42167.

*Hvass, Weisman, King & Allen, Charles T. Hvass, O. C. Adamson II,* and *Robins, Meshbesher, Singer & Spence,* for appellant.

*Keith M. Stidd,* City Attorney, and *Edward R. Kenneally,* Assistant City Attorney, for respondent.

*Gene P. Bradt, Wayne P. Dordell,* and *Hansen, Hazen, Dordell & Bradt,* for American Mutual Insurance Alliance and National Association of Independent Insurers, amici curiae.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying plaintiff's motion for a new trial.

For the purposes of this appeal the following facts have been stipulated by the parties:

"On April 24, 1967, at or about 1:45 P.M. on said day, Julius Peterson, a.k.a. Helmer J. Peterson, hereinafter referred to as Julius Peterson, was walking as a pedestrian along the sidewalk located adjacent to the property located at 4109 East 46th Street, Minneapolis, Minnesota. Julius Peterson was walking in an Easterly direction on the south side of 46 Street. Julius Peterson tripped and fell over a raised portion of the sidewalk, and sustained an injury to his right knee for which he was hospitalized at Fairview Hospital in Minneapolis, from April 24, 1967 to June 19, 1967. He was treated by various doctors from the Belzer Clinic in Minneapolis, Minnesota.

"On May 22, 1967 a Notice of Claim was filed with the City of Minneapolis, setting forth a description of the place where the accident occurred, Julius Peterson's injuries and a claim for damages against the City of Minneapolis. Thereafter, a lawsuit was commenced by Julius Peterson against the City of Minneapolis by the filing of a Summons and Complaint. An Answer was interposed on behalf of the City of Minneapolis denying liability and interposing the defense of contributory negligence and assumption of risk.

"On July 2, 1969, the case was called for trial before the Hon-

284

orable Tom Bergin, one of the Judges of the above named court and jury. The case was tried on July 2nd, and July 3rd, and evidence was introduced on behalf of plaintiff from which the jury could find that there was a defect in the public sidewalk, located adjacent to 4109 East 46th Street, Minneapolis, Minnesota, and that the City of Minneapolis either had constructive notice or actual notice of such defect. Further, there was evidence introduced from which the jury could find that the defect was a proximate cause of injury to Julius Peterson and that he did, in fact, sustain an injury to his knee that required an expenditure of Two Thousand One Hundred Seventy-six and 95/100ths Dollars ($2,176.95), for hospitalization and the additional sum of Six Hundred Twenty-seven and No/100ths Dollars ($627.00) for medical services rendered by the Belzer Clinic.

"Further evidence was introduced from which the jury could find that a Notice of Claim was filed with the City of Minneapolis within the required statutory period.

"The City of Minneapolis introduced evidence from which the jury could find that the City did not have actual or constructive notice of the defect, and, further, that Julius Peterson was guilty of contributory negligence, and, in addition, assumed the risk of injury. The trial court submitted a general verdict to the jury encompassing the question of negligence and assumption of risk on the part of Julius Peterson, as well as the issue of damages.

"Counsel for Julius Peterson requested the Court to submit M.S.A. 604.01, Subdivision 1, insofar as the question of contributory negligence was concerned.

"The trial court refused to submit the effect of contributory negligence as set forth in M.S.A. 604.01, and charged the jury that contributory negligence on the part of Julius Peterson acted as a complete bar to his cause of action.

"The jury returned a verdict in favor of the defendant.

"Plaintiff moved the court for a new trial on the sole ground that the court erred in instructing the jury that contributory

negligence was a complete defense rather than submitting the effect of contributory negligence under M.S.A. 604.01.

"The Motion for new trial was denied by the court on July 29, 1969."

L. 1969, c. 624 (now coded as Minn. St. 604.01), was enacted by the last session of the legislature, adopting comparative negligence in the place of contributory negligence. So far as material to this inquiry, it reads:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering. When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award.

\*   \*   \*   \*   \*

"This act shall be effective in any action the trial of which is commenced after July 1, 1969."

The only question before us is whether this act can constitutionally be given retroactive effect.

We have had occasion in recent years to abrogate several old laws and adopt new ones in their place. Thus, in Weber v. Stokely-Van Camp, Inc. 274 Minn. 482, 144 N. W. (2d) 540, we abandoned the rule that the negligence of a servant is imputed

to the master so as to bar the master's claim for damages against a negligent third party in an automobile case. In Balts v. Balts, 273 Minn. 419, 142 N. W. (2d) 66, we abolished the rule that a child is immune from suit by the parent arising out of a tort action. In Silesky v. Kelman, 281 Minn. 431, 161 N. W. (2d) 631, we abandoned the rule that a parent is immune from suit by a child arising out of a tort action, stating certain exceptions; and in Thill v. Modern Erecting Co. 284 Minn. 508, 170 N. W. (2d) 865, we adopted the rule that a wife is entitled to recover for loss of consortium.

In all of these cases we have applied the new law prospectively except as to the litigants involved in the case bringing the matter before us. In none of them have we held that it was constitutionally impermissible to apply the new law retrospectively. In fact, we could hardly hold that the litigant bringing the case before us should have the benefit of the new law if it were constitutionally impermissible to apply the law retrospectively, for the reason that it would not be possible to hold that it was a violation of a constitutional right in one case and not in the other. Rather, our decisions have been based on a policy that it would be unfair to apply the new law to cases that have arisen prior to the change. This reasoning is in harmony with the statutory provision that laws are not to be given retroactive effect unless it clearly appears from the act itself that such was the intention of the legislature. Minn. St. 645.21. In the case now before us it is clear that the legislature intended to have the law apply retrospectively. The legislative history of the enactment of this bill clearly indicates that the question of the date of its application was thoroughly considered at least by the committees of both houses of the legislature. The original bill was introduced in the House on January 27, 1969, and sent to the Committee on Judiciary. At that time it had no effective date.[1] On February 24 it was reported out of the House Judiciary Committee with

---

[1] See, Journal of the House, 1969, p. 168.

the provision that it was "not to apply to any cause of action arising prior to January 1, 1970." [2] On March 3 it passed the House with the above provision.[3] On March 5 it was sent to the Senate Judiciary Committee.[4] On April 18 it was reported out of the Senate Judiciary Committee amended to read "effective in any action the first trial of which is started after the effective date of this act." [5] On May 2 it passed the Senate as thus amended.[6] On May 3 the House refused to concur in the Senate amendment and requested a conference committee.[7] On May 15 the conference committee report provided that the law was to be "effective in any action the trial of which is commenced after July 1, 1969." [8] As so reported it passed the House on May 15,[9] and on May 16 it passed the Senate.[10]

From this legislative history there can be little doubt that the bill as passed was intended to have retrospective effect. Thus, the only question before us is whether the legislature could constitutionally provide that the act should have retrospective application.

While the courts generally express varying degrees of distaste with retroactive laws, they are usually upheld as long as they do not interfere with *vested* legal rights. The rule itself seems simple enough, but the difficulty comes in defining what is a vested right.[11] Probably the closest that we have come to attempting its definition is in Halverson v. Rolvaag, 274 Minn. 273, 275, 143 N. W. (2d) 239, 241, where we held that a law re-

---

[2] Id. p. 529.

[3] Id. pp. 619, 620.

[4] Journal of the Senate, 1969, p. 478.

[5] Id. pp. 1199, 1200.

[6] Id. p. 1571.

[7] Journal of the House, 1969, p. 2194.

[8] Id. p. 3105.

[9] Id. pp. 3105, 3106.

[10] Journal of the Senate, 1969, p. 2218.

[11] See 3B Dunnell, Dig. (3 ed.) § 1618, for rights held to be vested. See § 1619 for rights held not vested.

ducing death benefits for a Minnesota National Guard member by the amount of certain Federal payments could be retroactive. With respect to the term vested rights we said:

"* * * The term 'vested interests,' when used in the constitutional sense to describe the kind of interest that cannot be impaired by retroactive legislation, reflects a determination that justice and equity require that the interest be preserved."

It is generally held that legislation dealing only with remedies and procedures are not beyond the reach of retrospective legislation. In Donaldson v. Chase Securities Corp. 216 Minn. 269, 13 N. W. (2d) 1, we held that the legislature could constitutionally change a statute of limitations. We said that the retroactive change did not violate the due process clause since (216 Minn. 275, 13 N. W. [2d] 4)—

"* * * the passage of time creates no vested right in the exemption from the remedy. * * *

* * * * *

"Statutes of limitation which only bar the recovery of a debt or damages for tort are a matter of legislative public policy or expediency and may be changed as legislative wisdom dictates."

In an article by Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, the author suggests three factors in determining whether a law may constitutionally be retroactive. They are (1) the nature and strength of the public interest served by the statute; (2) the extent to which the statute modifies or abrogates the preenactment right; and (3) the nature of the right the statute alters. While these tests are as nebulous as the term itself, they may furnish some guidelines in determining whether the right is one that can be abrogated by legislative act. As to the first two, there is no difficulty here. We have for a number of years pointed out that the comparative-negligence rule in personal injury cases would be more equitable than the contributory-negligence rule we had

followed.[12] Furthermore, contributory negligence is not completely eliminated by Minn. St. 604.01. It still applies in balancing the degree of plaintiff's negligence against that of defendant. The main difficulty is with the third factor. It seems here that we simply must use our best judgment in determining whether the right is one that has become so fixed that it would be inequitable to abrogate it by retrospective legislation.

In other states similar reasoning may be found. In Bielski v. Schulze, 16 Wis. (2d) 1, 114 N. W. (2d) 105, the Wisconsin court, for example, held that rules governing contribution and gross negligence could be changed retrospectively. The court did state the limitations of the new rules.

Augustus v. Bean, 56 Cal. (2d) 270, 14 Cal. Rptr. 641, 363 P. (2d) 873, involved the right to contribution. Plaintiff there was injured in 1956 as the result of the negligent operation of two tortfeasors. He recovered a judgment against them in April 1958 which was satisfied by one of the tortfeasors, who then sued for contribution against the other. In 1957 the California legislature passed a law permitting contribution between tortfeasors that did not exist at the time the accident occurred. The court held that the 1957 act providing for contribution applied even though the injury occurred in 1956. With respect to retroactive application of the statute, the court said (56 Cal. [2d] 272, 14 Cal. Rptr. 642, 363 P. [2d] 875):

"Our construction of section 880 does not give rise to a problem of retroactive impairment of a vested right. As of the time of the accident a person did not have a vested right at common law to avoid paying for the consequences of his negligence merely because there were other tortfeasors involved. * * *

"* * * Section 880 should be construed in the light of the primary purpose of title 11, which is to provide for the creation

---

[12] Haeg v. Sprague, Warner & Co. Inc. 202 Minn. 425, 281 N. W. 261; Christensen v. Hennepin Transp. Co. 215 Minn. 394, 412, 10 N. W. (2d) 406, 417, 147 A. L. R. 945, 957.

and enforcement of a cause of action for contribution in order to eliminate an inequity existing at common law, and the date of the original injury is unimportant in the accomplishment of that purpose."

Much the same can be said here. While it may be true that some plaintiffs will recover under a comparative-negligence rule who would be barred under the contributory-negligence rule, it is also true that in many cases plaintiff, even though permitted some recovery, will recover less under comparative negligence for the reason that the fault of the parties is compared and plaintiff's recovery is diminished in proportion to the amount of negligence attributable to him.

While cases could be found that may indicate the opposite, we think the better rule is that the legislature had the constitutional right to determine this question of policy and that it did not affect a right which could be considered such a vested right as to prohibit constitutionally any change in it. The legislature has the same constitutional power to make a new statute retrospective in application as does the court. As we have pointed out above, the court has in a number of cases applied changes in laws similar to this in a retrospective manner, at least as to the parties-litigant who bring the matter before the court. If the court can do that, so can the legislature.

We therefore come to the conclusion that the legislature did have constitutional power to make the law under consideration retrospective in its application and that the court erred in refusing to submit to the jury the rule of comparative negligence. As a result there must be a new trial.

Reversed.