**Walter E. LAUE, Petitioner,**

v.

**PRODUCTION CREDIT ASSOCIATION OF BLOOMING PRAIRIE, Respondent.**

**State of Minnesota, Intervenor.**

**Charles B. KELLY, a.k.a. Charles Kelly, et al., Petitioners,**

v.

**FEDERAL LAND BANK OF ST. PAUL et al., Respondents.**

**Nos. CX–86–617, C1–86–652.**

Court of Appeals of Minnesota.

July 22, 1986.

---

E. Kent Christian, Moulton Law Office, Rochester, for petitioner in No. CX–86–617.

Robert M. Halvorson, New Ulm, for respondent in No. CX–86–617.

Hubert H. Humphrey, III, Minnesota Atty. Gen., John Tunheim, Sol. Gen., Catherine F. Haukedahl, Jon K. Murphy, Sp. Asst. Attys. Gen., St. Paul, for State.

E. Kent Christian, Rochester, for petitioners in No. C1–86–652.

John B. Arnold, Michaels Seeger Rosenblad & Arnold, Rochester, for respondents in No. C1–86–652.

Considered and decided by POPOVICH, C.J., and FOLEY and FORSBERG, JJ., without oral argument.

## OPINION

POPOVICH, Chief Judge.

Petitioners seek writs of mandamus directing the trial courts to stay collection actions pending against their agricultural property. Both trial courts found the 1986 Farmer-Lender Mediation Act, 1986 Minn. Laws ch. 398, art. 1, inapplicable to proceedings initiated before the Act's effective date. We stayed further collection proceedings, ordered briefing and granted the State of Minnesota leave to intervene. We grant mandamus.

## FACTS

By summons and complaint served on March 12, 1986, respondent Production Credit Association of Blooming Prairie (PCA) sought (1) a money judgment against petitioner Walter Laue for unpaid loans and (2) recovery of secured collateral. Simultaneously, PCA sought pretrial possession of the property pursuant to Minn. Stat. § 565.23 (1984). A hearing on that motion was scheduled for April 7, 1986.

Petitioners Charles, Lois and Michael Kelly had problems with repayment of loans secured by a mortgage on their farm in 1983. Their petition for bankruptcy was dismissed in December 1984, after the bankruptcy court found reorganization of the farming operation was not economically feasible. Foreclosure proceedings began in May 1985. In August, the district court denied a petition for stay of foreclosure pursuant to the mortgage moratorium act, Minn.Stat. §§ 583.04–.05 (Supp.1985), finding additional time would not permit petitioners to cure the default.

Negotiations between the Kellys and the Federal Land Bank (FLB) continued in an attempt to arrange an alternative to foreclosure. New foreclosure proceedings commenced and a sale was scheduled for January 1986. That sale was cancelled after negotiation progress was made. A proposal for petitioners to sell their land to a relative was never completed, however, and a new foreclosure proceeding was brought in February 1986 with a sale scheduled for April 16.

The Minnesota Legislature adopted an omnibus farm bill in March 1986, after foreclosure and replevin proceedings had been served against all petitioners in this case. Chapter 398, art. 1, 1986 Minnesota Laws, is the Farmer-Lender Mediation Act (hereinafter the Act), which became effective on March 22, 1986, the day after it was signed by Governor Perpich.

The Act requires creditors desiring "to garnish, levy on, execute on, seize, or attach agricultural property" to first serve notice on the debtor of the right to mandatory mediation. *Id.* § 11, subd. 1. If the debtor promptly requests mediation, debt proceedings may not continue until 90 days after mediation is concluded or until a mediation agreement is reached. *Id.* subds. 2, 5. If a debtor has not received a mediation notice, the debtor may request mediation. *Id.* subd. 2(c).

Petitioners Laue and Kelly did not receive mediation notices. Laue requested

mediation on April 3, after the claim and delivery hearing was already scheduled for April 7. At that hearing, Laue argued further proceedings should be stayed pending mediation. The trial court ruled the Act did not stay proceedings brought before the Act's effective date, and granted relief to PCA.

On April 8, Laue brought an *ex parte* motion for a temporary restraining order before a different judge of the district court. The motion was denied, based upon the prior ruling. Laue now seeks a writ of mandamus compelling the trial court to stay proceedings pending mandatory mediation.

Petitioners Kelly sought a stay of the April 16 foreclosure sale pending mediation. On April 14, the trial court denied injunctive relief, finding the Act applies only to proceedings commenced after its effective date. The Kellys seek a writ of mandamus compelling the trial court to stay foreclosure pending mediation.

## ISSUES

1. Does mandatory mediation apply to proceedings begun before March 22, the effective date of the Act?

2. Does application of the statutory provisions result in an unconstitutional impairment of contract?

## ANALYSIS

1. *Scope of Review*

■ The primary objective of courts interpreting statutes is to ascertain and give effect to legislative intent. *Stawikowski v. Collins Electric Constr. Co.*, 289 N.W.2d 390, 395 (Minn.1979). Our interpretation is guided by the principles of statutory construction adopted by our legislature. *See* Minn.Stat. §§ 645.01–.49 (1984).

■ Statutes must be construed to give effect to all provisions.

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(1) The occasion and necessity for the law;

(2) The circumstances under which it was enacted;

(3) The mischief to be remedied;

(4) The object to be attained;

(5) The former law, if any, including other laws upon the same or similar subjects;

(6) The consequences of a particular interpretation;

(7) The contemporaneous legislative history; and

(8) Legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16.

2. *Retroactivity*

■ There is a presumption against retroactive application, unless legislative intent is clearly and manifestly expressed.[1] Minn.Stat. § 645.21. This court may "not give retroactive effect to a statute unless a purpose that it have such effect is implicit therein." *Schoening v. United States Aviation Underwriters Inc.*, 265 Minn. 119, 127, 120 N.W.2d 859, 864 (1963). We hold the statute applies to pending proceedings for the following reasons.

(a) Article 2 of chapter 398 relating to redemption of agricultural homesteads under the omnibus farm bill, explicitly applies only to:

foreclosures or executions on real property that have foreclosure notices or summons and complaint served on the mortgagor or execution notices served on the debtor *on or after the effective date.*

1986 Minn. Laws ch. 398, art. 2, § 5 (emphasis added). By contrast, article 1 contains no explicit statement regarding its

1. The dissent erroneously relies in great part on *Lovgren v. Peoples Electric Co.*, 380 N.W.2d 791 (Minn.1986). While that decision states basic principles for interpretation of statutes, which are adhered to here, a delayed effective date was the sole basis for determining whether the legislature intended retroactive application. Here, no such delay in effective date exists and other manifest expressions of legislative intent confirm our application of the involved statute.

application to pending proceedings. Since the statute is ambiguous, we must therefore construe the Act. *See id.* art. 1, § 19.

(b) The Act requires creditors to serve notice upon the debtor of the right to mediation. *Id.* § 11, subd. 1. "The creditor may not *begin* the [debt enforcement] proceeding until the creditor and debtor have completed mediation," *id.* (emphasis added), an agreement is reached, *id.* subd. 5, court ordered additional suspension for lack of good faith by the creditor expires, *id.* § 12, subd. 3, or the mediator finds the debtor is not mediating in good faith. *Id.* subd. 4. For proceedings begun *after* the Act's effective date, it is clear a mediation notice must be served by the creditor.

Less clear is the intent of the following passage.

(c) If a debtor has not received a mediation notice and is subject to a proceeding of a creditor enforcing a debt against agricultural property under chapter 580 or 581 or sections 336.9–501 to 336.9–508, terminating a contract for deed to purchase agricultural property under section 599.21, or garnishing, levying on, executing on, seizing, or attaching agricultural property, the debtor may file a mediation request with the commission. The mediation request form must indicate that the debtor has not received a mediation notice.

1986 Minn. Laws ch. 398, art. 1, § 11, subd. 2(c).

Respondents argue subdivision 2(c) allows only debtors who *should* have received a mediation notice from the creditor before the proceedings began to request mediation. Petitioners and the State of Minnesota argue the subdivision confers upon *all* agricultural debtors who have not received mediation notices the right to request mediation, even though notice was

not required to be served when the action began.

Legislative intent is clearly expressed in findings regarding the need for adoption of the Act:

The legislature finds that the agricultural sector of the state's economy is under severe financial stress due to low farm commodity prices, continuing high interest rates, and reduced net farm income. The suffering agricultural economy adversely affects economic conditions for all other businesses in rural communities as well. Thousands of this state's farmers are unable to meet current payments of interest and principal payable on mortgages and other loan and land contracts and are threatened with the loss of their farmland, equipment, crops, and livestock through mortgage and lien foreclosures, cancellation of contracts for deed, and other collection actions. The agricultural economic emergency requires an orderly process with state assistance to adjust agricultural indebtedness to prevent civil unrest and to preserve the general welfare and fiscal integrity of the state.

*Id.* § 6.

These findings are relevant for ascertaining legislative intent. *See* Minn.Stat. § 645.16. The necessity for the Act and primary circumstance leading to its enactment is clearly "the agricultural economic emergency." Its object is "to prevent civil unrest and to preserve the general welfare and fiscal integrity of the state." Construing the legislation to exclude all debtors already subject to foreclosure, cancellation, replevin, and other collection proceedings from the benefits of mandatory mediation, "an orderly process" designed to adjust agricultural indebtedness, as advocated by respondents, is entirely inconsistent with *clearly expressed* legislative intent.[2]

---

**2.** The dissent seemingly argues this legislation need not apply to already initiated proceedings because so few initiated proceedings exist. We disagree on two grounds. First, the dissent's estimate of commenced actions is not based on the record, is erroneous, without merit, and arbitrary. State officials have publicly request-

ed all creditors to stay proceedings against agricultural property until this court rules in this matter. *See* Minnesota Government Report May 8, 1986, p. 4. Second, the number of farmer-lender relationships affected by this litigation is irrelevant. Even if the petitioners in these cases were the only affected parties, this

**828**

(c) The "contemporaneous legislative history" indicates concern for farmers *already suffering* the effects of a critical agricultural economy. Subdivision 2(c) was proposed at a February 4, 1986 committee hearing for the express purpose of "allow[ing] the debtor *in the process of debt collections* to begin a mandatory mediation meeting." (Emphasis added). If the legislature intended that mandatory mediation be available only to debtors against whom debt collection proceedings were begun *after* adoption of the Act, it could easily have said so. In fact, the legislature acted prospectively when it conferred upon debtors the right to separately redeem the homestead after foreclosure, when foreclosure proceedings against farm property are brought *after* the effective date of article 2. *See id.* art. 2, § 5.

Petitioner Laue submitted the affidavit of Representative David T. Bishop, in which Representative Bishop said "mandatory mediation was to apply to legal actions initiated prior to the effective date of the legislation." Representative Bishop said he offered at a conference committee meeting language which would have explicitly excluded already initiated legal actions from the terms of the new bill, but his proposal was rejected as contrary to the intent of the legislation. No recorded proceedings exist of that conference committee meeting.

Subsequent to submission of this matter to the court, Representative Kenneth J. McDonald, chairman of the house agriculture committee, submitted *ex parte* to this court a letter stating his opinion regarding legislative intent. He claimed the omnibus farm bill was not intended to apply to collection activities initiated prior to the act's effective date.

■ In ascertaining and giving effect to legislative intent, we are limited to analyzing *contemporaneous* legislative history. *See* Minn.Stat. § 645.16(7). Contemporaneous history consists of "events leading up to [the act], the history of its passage, and any modifications made during its course." *Sevcik v. Commissioner of Taxation*, 257 Minn. 92, 103, 100 N.W.2d 678, 687 (1959). Clearly, statements made by legislators following passage of an act are *not* contemporaneous. Those statements are not based on recorded proceedings and therefore are not subject to verification.[3] We cannot extend deference to subsequent statements of intent, but must instead rely upon recorded proceedings made before and during the consideration and passage of the act.

(d) The plain language of the Act allows *any* debtor who "has not received a mediation notice and [who] *is subject to a proceeding of a creditor*" to request mediation. This language constitutes a clear and manifest expression of legislative intent to afford mediation to all agricultural debtors.

■ (e) The retroactive modification of remedies and applicable time limitations is an appropriate exercise of legislative power. "It is generally held that legislation dealing only with remedies and procedures [is] not beyond the reach of retrospective legislation." *Peterson v. City of Minneapolis*, 285 Minn. 282, 288, 173 N.W.2d 353, 357 (1969). The Minnesota Supreme Court in *Peterson* concluded "it is clear that the legislature intended to have [comparative fault legislation] apply retrospectively." *Id.* at 286, 173 N.W.2d at 356.

By its terms, the statute in *Peterson* applied "in any action the trial of which is commenced after July 1, 1969." 1969 Minn. Laws ch. 624, § 2. Although trial began after July 1, Peterson's claim arose prior to adoption. The supreme court ordered the trial court to apply the comparative fault provisions, even though Peterson's suit was pending *before* the effective

---

court could not avoid its responsibility to construe the Act and give effect to legislative intent.

**3.** The dissent's citation of *Starkweather v. Blair,* 245 Minn. 371, 71 N.W.2d 869 (1955) is somewhat misplaced. At the time of that decision, recordings of committee and floor proceedings were not made. Now such meetings are recorded, providing evidence of contemporaneous legislative history to verify legislative intent.

date of the statute. Similarly, our legislature in 1986 had the power to modify the remedies and procedures for pending collection actions involving agricultural property.

### 3. *Application Not Retroactive*

We do not agree with respondents that interpretation of the Act so as to give full effect to subdivision 2(c) actually constitutes retroactive application. By its own terms, the Act allows any debtor who "has not received a mediation notice and [who] is subject to a proceeding of a creditor" to request mediation. Petitioners did not receive mediation notices and are subject to proceedings by their creditors. Our holding today is consistent with the clear language of the statute. "Here, the language of the statute is precise and unambiguous and we must give effect to the statute as written." *Christopherson v. Federal Land Bank,* 388 N.W.2d 373, 374 (Minn. 1986) (clear language of mortgage moratorium act, precluding relief if a second or subsequent mortgage is made against the property after May 24, 1983, given effect).

### 4. *Impairment of Contract*

Respondent FLB contends the Act results in an unconstitutional impairment of its contracts in violation of the Minnesota Constitution and deprives it of property rights without due process. *See* U.S. Const. amend. XIV, Minn. Const. art. 1, § 11.

■ To evaluate a claim of impairment of contracts, we must determine whether (1) the Act imposes a substantial impairment, (2) the state has shown a significant and legitimate public purpose for the Act, and (3) the action taken by the legislature is reasonable in light of the public purpose.

*Christensen v. Minneapolis Municipal Employees Retirement Board,* 331 N.W.2d 740, 750–51 (Minn.1983). Respondent FLB has not specifically addressed any of these factors.

(a) The Minnesota Mortgage Moratorium Law of 1933 was challenged as an unconstitutional impairment of contract. *Home Building & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). The United States Supreme Court held the law, which allowed postponement of foreclosure and execution sales and extension of redemption periods, was a valid exercise of the state's police power. It cited the legitimate public purpose of an "economic emergency which threatened 'the loss of homes and lands which furnish those in possession the necessary shelter and means of subsistence' " and the absence of actual impairment of the underlying debt. *Id.* at 444–45, 478, 54 S.Ct. at 242, 254.

■ Postponement of foreclosure sales in the 1933 Act, like the stay pending mediation provided by the 1986 Act, did not impair the creditor's contract on the debt itself. A change of remedy which does not materially lessen the value of the contract is valid. *State ex rel. Lichtscheidl v. Moeller,* 189 Minn. 412, 417, 249 N.W. 330, 332 (1933) (upholding 1933 act permitting sheriff to postpone foreclosure sales for 90 days).[4]

(b) The seriousness of the farm crisis and its orderly alleviation are legitimate public purposes for legislative action. By limiting the time for mediation, imposing obligations of good faith upon participating debtors and creditors, and repealing the Act effective July 1, 1988, the legislature has carefully tailored the means to protect the public purpose without unreasonably burdening creditors.

---

**4.** The dissent attempts to distinguish between impairment of farmer-lender contractual rights arising before and after the effective date of the involved legislation based on an erroneous application of the vested rights doctrine. Here, lien enforcement proceedings have merely begun. No "liability" has been determined. *Cf. Yaeger v. Delano Granite Works,* 250 Minn. 303, 84 N.W.2d 363 (1957) (liability for benefits payable to employee's survivors were fixed by statute effective at date of employee's death and could not be shifted subsequently by later-enacted statute). Contractual rights continue to exist and are not affected by the stay; their enforcement is merely postponed. The lenders' rights, vested either at signing of the contract or at completion of foreclosure, are unaffected by commencement of enforcement proceedings.

■ (c) Respondent FLB also argues by interfering with its contract rights, the Act violates due process. Due process requires that legislation which interferes with protected property rights must be rationally related to a legitimate governmental purpose. *AFSCME Councils 6, 14, 65 & 96 v. Sundquist,* 338 N.W.2d 560, 574–75 (Minn. 1983). As noted, the Act does not defeat the creditor's interest in the secured collateral and is clearly related to the pressing governmental concern of alleviating the farm crisis.

(d) The comments of the Minnesota Supreme Court in 1933 upholding, against an impairment of contract challenge, a statute permitting postponement of foreclosure sales for 90 days, are equally appropriate here:

> The legislature, coming from all parts of the state, at the time it passed [the act] had full knowledge of the critical situation then existing and deemed it necessary to enact the law as an emergency measure, under the police power, temporarily to protect owners of property and homes and for the public welfare and protection. The act, not being shown to cause any serious or substantial damage to holders of mortgages, was a valid exercise of that power and is not unconstitutional.

*State ex rel. Lichtscheidl v. Moeller,* 189 Minn. at 419, 249 N.W. at 333.

5. *Additional Issues*

Because petitioners are entitled to stays pending mediation under the Act, it is not necessary to rule on the alternative bases for injunctive relief raised by them. Laue challenged the sufficiency of notice given by PCA regarding the specific property to be seized. *See* Minn.Stat. § 565.23 (1984). The Kellys argued they were entitled to a stay of foreclosure because FLB allegedly violated provisions of the federal Farm Credit Act of 1971, as amended. *See* 12 U.S.C. §§ 2001–2259 (1982), *amended by*

Farm Credit Amendments Act of 1985, Pub.L. No. 99–205, 99 Stat. 1678.

## DECISION

The Farmer-Lender Mediation Act of 1986 requires mediation in this case before further foreclosure and seizure proceedings. This application of the Act is consistent with legislative intent and does not result in an unconstitutional impairment of contract.

Mandamus granted.

FOLEY, J., concurs in part and dissents in part.

FOLEY, Judge (concurring in part and dissenting in part).

I respectfully concur in part and dissent in part. It is my view that as a temporary emergency measure the Farmer-Lender Mediation Act is prospectively constitutional but is not retroactive in its application to the cases on appeal.

1. **THE FARMER–LENDER MEDIATION ACT OF 1986, AS A TEMPORARY EMERGENCY MEASURE, IS CONSTITUTIONAL WHEN VIEWED AND APPLIED PROSPECTIVELY.**

The temporary emergency Farmer-Lender Mediation Act, 1986 Minn. Laws ch. 398, art. 1, §§ 5–17 (codified as Minn.Stat. §§ 583.20–.32), was enacted to help preserve the integrity of the farm economy of Minnesota in light of the present farm economic crisis. 1986 Minn. Laws ch. 398, art. 1, § 6. This Act temporarily extends the time for foreclosure[1], not requiring any change of contract terms, without the voluntary consent of the parties. *See id.* §§ 1(6)–4.[2]

The Act postpones the creditor's remedies to allow both parties time to engage in good faith mediation in the hope that financially distressed farmers may reach some agreement with their creditors that enables them to repay their debts. *Id.* §§ 6, 10–13.

---

1. The Farmer-Lender Mediation Act is repealed on July 1, 1988. 1986 Minn. Laws ch. 398, art. 1, § 18.

2. The changes effected in the Act by the 1986 Special Session do not affect these proceedings.

If a creditor fails to mediate in good faith, the Act allows a trial court to *require* good faith mediation for up to 60 days during which time all creditor remedies are suspended. *Id.* § 12, subd. 3. If a creditor still fails to engage in good faith mediation, the trial court must suspend the creditor's remedies for an additional period of 180 days. *Id.* § 12, subd. 3. The duty of good faith is likewise placed upon the debtor. *Id.* § 12, subds. 1 and 4. The debtor's failure to mediate in good faith allows the creditor to immediately proceed with its remedies. *Id.* § 12, subd. 4.

The Act, as applied prospectively to creditors who have not commenced proceedings against farmer-debtors before its effective date (March 22, 1986), does not change creditor's contract rights, but merely postpones the time for foreclosure to allow time for mediation. Thus, the Act is within the constitutional power of the legislature to enact as prospective legislation and does not impair the creditor's contract rights where the creditor had not commenced legal proceedings before its effective date. *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

In *Blaisdell,* the United States Supreme Court found that a similar temporary emergency measure did not impair contract rights where it did not change the rights but only postponed foreclosure. Chief Justice Hughes noted that the Minnesota statute postponing foreclosure of mortgages

> does not impair the integrity of the mortgage indebtedness. The obligation for interest remains. The statute does not affect the validity of the sale or the right of a mortgagee-purchaser to title in fee, or his right to obtain a deficiency judgment, if the mortgagor fails to redeem within the prescribed period. Aside from the extension of time, the other conditions of redemption are unaltered.

*Id.* at 425.

The Supreme Court considered five factors important to its analysis and conclusion that the Minnesota statute did not

violate the contract clause of the Constitution:

(1) "An emergency existed in Minnesota which furnished a proper occasion for the exercise of the reserved power of the state to protect the vital interests of the community." *Id.* at 444, 54 S.Ct. at 242;

(2) "The legislation was addressed to a legitimate end * * *." *Id.* at 445, 54 S.Ct. at 242;

(3) "[T]he relief afforded and justified by the emergency [was of] a character appropriate to that emergency [and was granted] upon reasonable conditions." *Id.;*

(4) "The conditions upon which the period of redemption is extended do not appear to be unreasonable." *Id.;* and,

(5) "The legislation is temporary in operation. It is limited to the exigency which called it forth." *Id.* at 447, 54 S.Ct. at 243.

The same factors are pertinent here and support a finding that the Farmer-Lender Mediation Act, as applied prospectively, does not violate the contract clause of the Constitution.

The rules set forth in *Blaisdell* have been consistently followed by Minnesota courts. *See, e.g., Christensen v. Minneapolis Municipal Employees Retirement Board,* 331 N.W.2d 740 (Minn.1983); *Western States Utilities Co. v. City of Waseca,* 242 Minn. 302, 65 N.W.2d 255 (1954); *Minnesota Gas Co. v. Public Service Commission, Department of Public Service, State of Minnesota,* 523 F.2d 581 (8th Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 320 (1976); *Minnesota Trust Company of Austin v. Hatch,* 368 N.W.2d 372 (Minn.Ct.App.1985).

I nonetheless disagree with the majority to the extent that it holds that application of the Act does not impair the contract rights of creditors who commenced actions against debtor-farmers *before* the Act went into effect on March 22, 1986. Here, the Production Credit Association commenced action on March 12, 1986 against Walter Laue seeking a money judgment and recov-

ery of secured collateral and the Federal Land Bank commenced foreclosure proceedings in February 1986 against Charles, Lois and Michael Kelly. Both creditors thus had vested rights in the actions already commenced.

It is recognized that vested rights include not only legal or equitable title to enforcement of a demand but include as well an exemption from new obligations created after the right vested.

\* \* \* \* \* \*

Where * * * the liability of the [parties] has been fixed under [statute], their vested right in such determined liability may not be destroyed by legislation which imposes a new obligation or an additional liability.

*Yaeger v. Delano Granite Works*, 250 Minn. 303, 307, 84 N.W.2d 363, 366 (1957) (citations omitted) (cited with approval in *Ridgewood Development Co. v. State*, 294 N.W.2d 288, 294 (Minn.1980)). The interference imposed by the majority here (which holds these creditors must now stop commenced proceedings, stay court dates and mediate the disputes) unreasonably burdens and unconstitutionally impairs vested contract rights.

## 2. BY ITS CLEAR LANGUAGE THE FARMER–LENDER MEDIATION ACT IS NOT TO BE APPLIED RETROACTIVELY.

Minn.Stat. § 645.21 (1984) provides: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Whether the Act is to be applied retroactively depends on the *express* intent of the legislature. *See Lovgren v. Peoples Electric Co., Inc.*, 380 N.W.2d 791, 795 (Minn.1986), *rev'g* 368 N.W.2d 16 (Minn.Ct.App.1985). In *Lovgren*, the supreme court noted that the fact a certain statute became effective after a 115–day delay period due to the fact the act contained no effective date, was "not sufficient evidence of a clear and manifest legislative intent that [the statute] be applied retroactively." *Id.* at 796.

Although the supreme court did review this court's ruling in *Lovgren* that the stat-

ute *implied* an intent that it be applied retroactively, it clearly stated that *the statute itself* must *expressly* indicate it is to be applied retroactively:

In prior cases where the court has found sufficient evidence of the requisite legislative intent, *there have been provisions in the statute clearly providing for retroactive application* or, at least, a delayed enactment date has been explicitly included in the provisions of the statute. *See, e.g., Viereck v. Peoples Savings and Loan Ass'n*, 343 N.W.2d 30 (Minn.1984); *Kozisek v. Brigham*, 169 Minn. 57, 210 N.W. 622 (1926) * * *; *State ex rel. Anderson v. General Accident Fire and Life Assurance Corp.*, 134 Minn. 21, 158 N.W. 715 (1916) * * *.

*Id.* (emphasis supplied).

*Lovgren* is dispositive on the retroactivity issue here and precludes application of the Act to matters commenced before enactment. The majority incorrectly construes the Act under the authority of Minn. Stat. § 645.16 which may only be used "[w]hen the words of the law are not explicit." *Id.* The majority concedes "article 1 contains no explicit statement regarding application to pending proceedings." I am therefore puzzled at the majority's footnote reference to my reliance on *Lovgren*, the most recent statement from the Minnesota Supreme Court on retroactivity. *Lovgren* is not so limited to its own facts, as the majority suggests.

The Act states: "The article is effective the day following final enactment." 1986 Minn. Laws ch. 398, art. 1, § 19. The article was enacted March 21, 1986, after respondents had commenced civil actions against appellants. Respondent Production Credit Association had commenced its litigation against Laue on March 12, 1986 and respondent Federal Land Bank commenced its action against the Kellys in February 1986. The Act does not state that it is to be applied retroactively to creditors and debtors who are in the midst of legal proceedings when the obligation to mediate became effective on March 22,

1986. *Lovgren* requires an *explicit* statement of such intent. *Id.*, 380 N.W.2d at 796. No inquiry beyond the words of the Act is therefore required because the Act is not ambiguous. *See* Minn. Stat. § 645.16; *Christopherson v. Federal Land Bank of St. Paul*, 388 N.W.2d 373 (Minn.1986); *Graber v. Peter Lametti Construction Co.*, 293 Minn. 24, 29, 197 N.W.2d 443, 447 (1972).

The majority engages in mental gymnastics and reverse logic to find that the Act is retroactive. For example, contrary to the principles of *Lovgren* and *Christopherson,* the majority looks at article 2, § 5 of chapter 398, which is not part of the Farmer-Lender Mediation Act, to construe the Farmer-Lender Mediation Act as a retroactive act. The majority finds that because article 2 indicates an intent for prospective application, article 1 must be construed as retroactive since no words denying this are stated in the Act.[3] This method of analysis ignores the mandate of *Lovgren* that a statute is to be construed as retroactive only where there is a "clear and manifest legislative intent that [it] be applied retroactively." *Id.*, 380 N.W.2d at 796.

The majority's analysis also ignores the direct language of *Lovgren*, quoted above, which notes that in prior cases a finding of retroactivity has been based on *"provisions in the statute clearly providing for retroactive application." Id.* (emphasis supplied). Instead of looking for an express provision (which obviously does not exist), the majority finds an ambiguity in isolating and construing article 1, § 11, subd. 2(c) of the Act. Although I do not think *Lovgren* requires refutation of the majority's construction of this isolated provision, I think it is important to note that if subdivision 2(c) is put into the perspective of the entire section, a logical time sequence appears.

Section 11 begins by stating:

Subdivision 1. A creditor *desiring to start a proceeding* to enforce a debt against agricultural property under chapter 580 or 581 or sections 336.9–501 to 336.9–508, to terminate a contract for deed to purchase agricultural property under section 559.21, or to garnish, levy on, execute on, seize, or attach agricultural property, must serve an applicable mediation notice under sections 1, 2, 3, and 4 on the debtor and the director. The creditor *may not begin the proceeding* until the creditor and debtor have completed mediation or as allowed under sections 5 to 17.

1986 Minn. Laws ch. 398, art. 1, § 11, subd. 1 (emphasis supplied). The language used in this subdivision indicates that the legislature intended that before a creditor begins pursuing its legal remedies, it must follow the procedures of the Act. No language obligates creditors who had already begun actions before March 22, 1986 to serve notice of mediation or engage in mediation.

Subdivision 2 of section 11 indicates the next action to occur:

Subd. 2. (a) A debtor must file a mediation request form with the director by 14 days after receiving a mediation notice. The mediation request form must state all known creditors. The director shall make mediation request forms available in the county recorder's and county extension office of each county.

(b) A debtor who fails to file a timely mediation request waives the right to mediation under the farmer-lender mediation act. The director shall notify a creditor stating that the creditor may proceed against the agricultural property because the debtor has failed to file a mediation request.

(c) If a debtor has not received a mediation notice and is subject to a proceeding of a creditor enforcing a debt against

---

**3.** No article of chapter 398 provides for retroactive application; all the articles of this chapter indicate either an effective date or that the article becomes effective the day after final enactment. Furthermore, to hold that the legislature intended that the act as written applies retroac-

tively might very well constitute an invasion of the doctrine of separation of powers. *See* U.S. Const. arts. I, II, III; Minn. Const. art. 3, § 1; *see also State v. Osterloh*, 275 N.W.2d 578, 579–80 (Minn.1978).

agricultural property, the debtor may file a mediation request with the [director]. The mediation request form must indicate that the debtor has not received a mediation notice.

*Id.*, § 11, subd. 2.

Subdivision 3 and the following subdivisions of article 11 explain the director's duties and finally the mediator's duties. Viewing section 11 in its entirety, it is clear that the legislature set forth each parties' duties in a logical time sequence of events. Only when one isolates part (c) of subdivision 2 does any ambiguity possibly arise as to whether a debtor may request mediation when the creditor had no obligation to provide notice of mediation under subdivision 1.

Finally, the majority musters support for its view that the Act is retroactive by noting the findings of the legislature regarding the current agricultural economic crisis. While I am mindful of a serious state-wide agricultural economic crisis (as the legislature was aware of the plight of our farmers and equally aware of the legitimate concern by the lending institutions), nonetheless, the Minnesota Supreme Court has held:

> Neither the wisdom of the laws nor their adequacy to accomplish a desired purpose may be taken into consideration by courts in determining what interpretation the laws should have; we must give effect to them as they are, regardless of our personal opinion regarding their adequacy.

*Norris Grain Co. v. Seafarers' International Union*, 232 Minn. 91, 109–10, 46 N.W.2d 94, 105 (1950) (footnote omitted) (quoted in *State v. Connelly*, 389 N.W.2d 734 (Minn.Ct.App.1986)). In addition, the supreme court has previously rejected the argument that a statutory omission may be explained as a legislative oversight: "We must reject this argument on the well-established ground that courts cannot supply that which the legislature purposely omits or inadvertently overlooks." *Wallace v. Commissioner of Taxation*, 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971) (quoted

with approval in *State v. Corbin*, 343 N.W.2d 874, 876 (Minn.Ct.App.1984)).

The decision whether an act should be applied retroactively rests with the legislature which has the power to expressly state this intent. The legislature is well aware that Minn. Stat. § 645.21 mandates a presumption of prospectivity unless the statute contains an *express* intent that it should be applied retroactively. Therefore I would affirm the trial court in each case here, holding that the Farmer-Lender Mediation Act does not apply retroactively to creditors who have commenced civil proceedings before March 22, 1986.

Finally, I wish to comment on appellants' attempt to rely on the affidavit and *ex parte* letter of individual legislators as indicative of the legislature's intent that this Act be applied retroactively. I agree with the trial court and majority that such material is irrelevant, and it is also inappropriate evidence of legislative intent.

> Laws would rest on an insecure foundation if courts were to seek to determine motives of individual members of the legislature in passing laws by resort to extraneous evidence which was not part of the journal entry.

*Starkweather v. Blair*, 245 Minn. 371, 380, 71 N.W.2d 869, 876 (1955) (cited in *State v. Howard*, 360 N.W.2d 637, 640 (Minn.Ct. App.1985)).

The overwhelming and great majority of farmers with mortgage debt will benefit by the Farmer-Lender Mediation Act of 1986 and there will be only a few cases (perhaps fewer than 10) where farmer-debtors who had actions commenced against them before March 22, 1986 assert the claims raised by the appellants. But those few cases, including those on appeal here, are exempt from application of the new Act for all the reasons stated herein. Because of the state-wide importance of the issues, both constitutional and statutory, these cases should be reviewed by the Minnesota Supreme Court.