**Larry R. OBERMOLLER, et al., Appellants,**

v.

**FEDERAL LAND BANK OF SAINT PAUL, Respondent.**

No. C5–86–2226.

Court of Appeals of Minnesota.

July 7, 1987.

Review Denied Sept. 18, 1987.

Bob A. Goldman, Tuveson, Goldman & Nelson, Albert Lea, for appellants.

Brian J. Murphy, Dennis H. Simpson, Quarnstrom, Doering, Pederson, Leary & Murphy, Marshall, for respondent.

Heard, considered and decided by LANSING, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

The trial court denied the application of appellants Larry and Connie Obermoller

for a temporary injunction to halt the foreclosure sale of their farm. Appellants argue that the trial court abused its discretion and that they should be allowed to set aside their homestead for a separate sale. Respondent has moved to dismiss the appeal on the grounds of mootness. We address the merits and affirm.

## FACTS

Respondent, the Federal Land Bank of Saint Paul, held a mortgage on certain farm land owned by appellants. On February 22, 1986, respondent published notice of a foreclosure sale of this land, to be held April 23, 1986. On March 22, 1986, the Minnesota Farmer-Lender Mediation Act, Minn.Stat. §§ 583.20–32 (1986), became effective. Appellants attempted to take advantage of this new law by filing a debtor mediation request on April 16, 1986.

Respondent, however, proceeded with the April 23 foreclosure sale on the assumption that the legislation did not apply to proceedings commenced before its enactment. Despite this sale, respondent also participated in mediation in June and July of 1986. In July 1986, this court issued its opinion in *Laue v. Production Credit Association*, 390 N.W.2d 823 (Minn.Ct.App. 1986), holding the farmer-lender mediation act applied even where foreclosure proceedings were already pending on the date the act became effective. Respondent continued to mediate, but also maintained the position that the retroactivity issue was on appeal to the Minnesota Supreme Court and, if *Laue* was reversed, the April 23 foreclosure sale would be valid.[1]

Appellants and respondent were unsuccessful in mediating a settlement and on September 17, 1986, respondent filed notice of a second mortgage foreclosure sale. This sale was to be held November 25, 1986. On November 12, 1986, appellants served a summons and complaint on respondent, seeking to have both the April foreclosure sale and the upcoming November foreclosure sale declared invalid because respondent had not negotiated in good faith and had not given the requisite notice of mediation rights under Minn.Stat. § 581.05. Appellants also requested damages in excess of $50,000.

On November 13, 1986, appellants applied for a temporary injunction to quash the upcoming November 25 foreclosure sale. A hearing was held on November 21, 1986. Appellants' only challenges to the foreclosure sale were that respondent failed to give notice of the right to mediation and that respondent did not participate in the mediation proceedings in good faith. The trial court refused to issue a temporary injunction, concluding that appellants had failed to demonstrate any probability of success on the merits because their underlying action was based on respondent's bad faith and no evidence of bad faith had been presented. The trial court also found appellants had failed to show irreparable harm would result from the sale since they could still institute an action under the mortgage foreclosure statutes to have the sale set aside.

## ISSUES

1. Does the occurrence of the foreclosure sale render this appeal moot?

2. Did the trial court abuse its discretion in denying appellants' application for a temporary injunction?

3. Should this case be remanded to allow appellants to set aside their homestead for a separate sale?

## ANALYSIS

### I.

 An issue is moot and will not be considered by this court:

When the affirmance or reversal of an order made in the course of the proceed-

---

1. A petition for review by the supreme court was not filed in *Laue*. The supreme court has held that even though debt enforcement proceedings were commenced prior to the effective date of the farmer-lender mediation act, the debtor may invoke mandatory mediation. *Production Credit Association of Worthington v. Spring Water Dairy Farm, Inc.*, 407 N.W.2d 88 (Minn.1987).

ing would make no difference in respect of the controversy on the merits * * *. *Barnes v. Macken,* 252 Minn. 412, 416, 90 N.W.2d 222, 226 (1958). Also, if during the appeal process an intervening event occurs "which renders it impossible to grant any relief or which makes a decision unnecessary," the appeal will be dismissed. *Id.*

Respondent contends that appellants' claim on appeal, that the trial court erred in not issuing an injunction halting the sale, is moot because the foreclosure sale has already taken place. Respondent argues that *Moore v. McDonald,* 165 Minn. 484, 205 N.W. 894 (1925), is similar to the present case and should control. We disagree. In *Moore,* petitioners were denied a temporary injunction that would have halted the building of a bridge. By the time the case reached the supreme court, the bridge had already been built. The supreme court found the appeal was moot because a reversal would accomplish nothing. *Id.* at 485, 205 N.W. at 895.

The present case is distinguishable because no such irreversible action has occurred. The redemption period has been running since November 1986. If this court were to agree with appellants that an injunction should have issued, the November foreclosure sale could be voided, resulting in, at least, a delayed redemption period. A reversal of the trial court's order could result in some relief to appellants, and therefore this court will address the merits of the appeal.

## II.

The issuance of a temporary injunction is largely a matter of judicial discretion. *Paradata of Minnesota, Inc. v. Fox,* 356 N.W.2d 852, 854 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Feb. 6, 1985). The limited question on appeal is whether the trial court's denial of the injunction constitutes a clear abuse of discretion. *Bud Johnson Construction Co. v. Metropolitan Transit Commission,* 272 N.W.2d 31, 32 (Minn.1978). This court views the facts alleged in the pleadings and the affidavits in the light most favorable to the party who prevailed below. *Id.* at 33.

In the present case the trial court refused to issue the temporary injunction primarily because of its assessment that appellants had failed to show bad faith and therefore were unlikely to prevail on the merits in their underlying action which was also based on respondent's bad faith in mediation. Minn.Stat. § 583.27, subd. 1 provides:

> The parties must engage in mediation in good faith. Not participating in good faith includes: (1) a failure on a regular or continuing basis to attend and participate in mediation sessions without cause; (2) failure to provide full information regarding the financial obligations of the parties and other creditors; (3) failure of the creditor to designate a representative to participate in the mediation with authority to make binding commitments within one business day to fully settle, compromise, or otherwise mediate the matter; (4) lack of a written statement of debt restructuring alternatives and a statement of reasons why alternatives are unacceptable to one of the parties; (5) failure of a creditor to release funds from the sale of farm products to the debtor for necessary living and farm operating expenses; or (6) other similar behavior which evidences lack of good faith by the party. A failure to agree to reduce, restructure, refinance, or forgive debt does not, in itself, evidence lack of good faith by the creditor.

Minn.Stat. § 583.27, subd. 2, sets out a procedure for a mediator to report a party's lack of good faith in mediation by filing an affidavit with the director and the parties. In its accompanying memorandum, the trial court emphasized that the mediator had not filed an affidavit. As the trial court noted, mediation proceedings are unrecorded, and therefore without such an affidavit a determination of bad faith is very difficult.

Appellants claim, however, that an affidavit from the mediator is not necessary to prove their claim of bad faith because there are several aspects of respondent's conduct that prove the claim. First, appellants

point to the fact that throughout mediation respondent continued to assert that if the supreme court reversed this court and determined that the mediation laws did not apply where debt enforcement proceedings had already been commenced, the April foreclosure sale would be valid. However, respondent did not use this argument to refuse to enter into mediation but only refused to waive the issue. Maintaining alternative legal positions is not unusual, especially in a case such as this where the law is in flux. Under the circumstances, respondent's approach does not necessarily evidence bad faith.

Appellants also argue that respondent's bad faith was shown because respondent believed it did not have to negotiate, could just wait out the mediation period and then foreclose. What respondent actually asserted at the hearing was that its physical presence was not even required at the mediation sessions and that by being present it had gone beyond what was required. Respondent's assertion is supported by Minn. Stat. § 583.28, subd. 1 (1986), which addresses instances when creditors need not attend mediation sessions. That section provides:

> A creditor that is notified of the initial mediation meeting is subject to and bound by a mediation agreement if the creditor does not attend mediation meetings unless the creditor files a claim form. In lieu of attending a mediation meeting, a creditor may file a notice of claim and proof of claim on a claim form with the mediator before the scheduled meeting. By filing a claim form the creditor agrees to be bound by a mediation agreement reached at the mediation meeting unless an objection is filed within the time specified. The mediator must notify the creditors who have filed claim forms of the terms of any agreement.

Respondent's stated positions regarding mediation are not sufficient to demonstrate that the trial court clearly abused its discretion in denying appellants' application for a temporary injunction.

Appellants also challenge the fact that respondent never served a mediation notice

on the debtor and the director as required under Minn.Stat. § 583.26, subd. 1. However, appellants themselves requested mediation under Minn.Stat. § 583.26, subd. 2(c) which provides:

> (c) If a debtor has not received a mediation notice and is subject to a proceeding of a creditor enforcing a debt against agricultural property under chapter 580 or 581 * * *, the debtor may file a mediation request with the director. The mediation request form must indicate that the debtor has not received a mediation notice.

The farmer-lender mediation act does not impose a penalty when a creditor fails to serve a mediation notice. In the present case mediation did occur. While respondent did not follow the creditor notice provision of section 583.26, subd. 1, we can discern no prejudice to appellants that would justify granting a temporary injunction to halt the foreclosure sale.

### III.

Finally, appellants have asked this court to remand their case to allow them to partition their homestead for a separate sale. In their complaint, appellants stated:

> 15. [Appellants] wish to set aside homestead rights and will do so if determined that [respondent has] a right to foreclose as they have thus far given every intention of doing. [Appellants] do not believe they should do so now, for fear that might give credence to the unlawful acts of the [respondent].

Minn.Stat. § 550.175 does provide that where property contains a portion of the debtor's homestead, the homestead may be sold and redeemed separately.

Appellant Larry Obermoller states in his affidavit accompanying the request for an injunction that:

> 7. Affiant is aware of his rights to give notice and set-off a homestead portion of these lands as stated in the Notice.
> 8. Because of the failure of mandatory mediation having taken place the sale Affiant believes cannot be effective. Therefore, Affiant has not elected a homestead portion to give Notice on.

9. The failure to halt the sale will cause Affiant immediate and irreparable harm by depriving Affiant of his right to set-off a homestead portion if indeed the sale were to be held as the Notice prescribed.

However, appellants' application for a temporary injunction refers only to halting the November sale. No request was made at the temporary injunction hearing to allow a separation of the property, and the trial court did not address this issue. Further, no mention of this issue was made in appellants' statement of the case.

We are unable to address an issue raised for the first time on appeal. We note, however, that the issue does still exist in appellants' underlying action and can be addressed through that proceeding.

## DECISION

The trial court did not abuse its discretion in denying appellants' application for a temporary injunction. We direct the parties and the trial court to expedite the resolution of this case on its merits in light of the fact that the redemption period continues to run.

Affirmed.